| 87 | 414 |
| 90 | 327 |

| 87 | 414 |
| d104 | 325 |
| 104 | 327 |

PETER DOYLE, and others, in equity,

*vs.*

PATRICK WHALEN, and others.

Washington.    Opinion April 13, 1895.

*Charity.    Eastport Fire-Fund.    Trusts.*

The defendants and others were constituted a relief committee of twenty for the purpose of making the generous contributions of the people, amounting to $38,000, promptly available in relieving the suffering and distress·caused by the disastrous fire of 1886 in the town of Eastport. *Held;* that the result of these liberal donations of money, was to create a private charity for the benefit of a designated class of persons, already well-known or capable of being readily ascertained; that the committee became trustees for the execution of a private trust for the benefit of the sufferers by the fire; and that the contributions were primarily designed for the immediate relief of the needy and distressed; and should have been managed under the influence of its primary purpose, and in the spirit of helpful beneficence and liberality contemplated by the donors. *Held*; *also,* that the bounty of the donors was limited to a specified class of persons then in being; that the donors had no purpose to create a permanent fund for a public and general charity in Eastport; and that the trust has not failed but is within the jurisdiction of the court sitting in equity.

*Held*; that when the primary purpose of the fund was accomplished, it being impracticable to restore the unexpended balance to the donors, who are unknown, the surplus, if any, should be used to repair the losses, as well as to relieve the immediate distress, of the sufferers by the fire.

*Held*; that the employment of this fund as a substitute for municipal taxation in the support of the town poor, would be a perversion of the charity, if such course were adopted after the fund was capitalized. Such a course would be contrary to sound public policy as tending to discourage similar acts of humanity and christian benevolence in like exigencies in the future.

The court, therefore, orders the appointment of special masters in chancery who, after due notice of the times and places appointed therefor, are directed to receive applications from all the sufferers by the fire, hear evidence in regard to the nature and extent of their respective losses and sufferings, and thereupon devise a scheme for the distributions, among such sufferers, of the entire relief fund available for that purpose, consisting of the $20,000 invested in Eastport bonds, with all income thereof not expended by the defendants prior to the service of the bill, and also of the proceeds from the sale of the relief building erected by the use of a portion of the fund.

The masters may consider not only the actual distress and amount of loss suffered by each, but the difference in the degree of suffering entailed upon

the rich and upon the poor, by the same amount of loss, and such other cognate matters as in their good judgment and discretion will aid in reaching conclusions most in harmony with the probable wishes and purposes of the donors under the circumstances.

ON REPORT.

Bill in equity, heard on bill, answers and proof, praying that the defendants, a finance committee and the inhabitants of Eastport, be required to render an account of all sums received by them and contributed to the sufferers by the Eastport fire in 1886, and of all sums paid out by them to said sufferers, and a statement of what they have done with the balance remaining in their control, and that the Relief building, so-called, built with funds contributed for the sufferers by the fire, be sold and the proceeds of said sale be added to the funds in the hands of the committee, and not distributed among the sufferers by said fire ; and that all the funds now in hand, with such sums as have been paid to the town of Eastport to support paupers, and with such further sum as may result from the sale of the building aforesaid, be placed in the hands of a receiver, to be by him distributed among the sufferers by said Eastport fire, your orators, as well as all others who shall show themselves entitled thereto and become parties to this suit, as the court by its master in chancery may direct.

(Answer.)

The joint and several answers of Patrick Whalen, Noel B. Nutt, Alden Bradford and the inhabitants of the town of Eastport.

The said defendants, answering, say :

First : — They admit that on the fourteenth day of October, A. D. 1886, a large amount of property in said town of Eastport was destroyed by fire, but they deny that the plaintiffs, or any of them, suffered large loss by reason of said fire, and if any of the plaintiffs suffered any loss whatever by reason thereof these defendants do not admit the same, but leave such plaintiffs to make proof of the same as they shall be advised, the facts relating thereto being much more fully within the knowledge of such plaintiffs than of these defendants ; and these defendants, further answering, especially deny that said plaintiffs, or either

of them were, at the date of the filing of said bill, or at any time prior thereto, in any condition of suffering or distress caused by said fire.

Second : — These defendants, further answering, say they admit on the fifteenth day of October, 1886, and on divers dates thereafter, contributions in clothing, money and other supplies, aggregating a large sum, were sent to said Eastport; but they say that said contributions were sent for the purpose of relieving actual suffering and distress then existing in said Eastport as the result of said conflagration; and they deny that such contributions were ever intended by their donors to be used for the purpose of making good to persons who were not in suffering or distress, losses of property sustained by them by reason of that fire.

Third : — And these defendants, further answering, say that a relief committee was chosen, as stated in said bill, consisting of many of the prominent and active citizens of said town of Eastport, and containing many more members than are stated in said bill, and that an executive committee and a finance committee were also chosen, and that said finance committee consisted of Noel B. Nutt, Patrick Whalen and Alden Bradford, as stated in the bill; that all said contributions were received by said relief committee, and that during the fall of 1886, succeeding said conflagration, and the following winter and spring, a large part of said contributions were distributed by said committees among those who were entitled to receive the same.

Fourth : — And these defendants, further answering, say that during said period from the date of said conflagration until the close of the month of March, 1887, the members of said committee gave their time and effort regularly, without compensation, to the work of distributing the funds and supplies which had been so received among those who were in any degree in distress or suffering caused by said fire; that said committees held regular meetings, considered every case as it was presented, obtained all information in regard to the same that could be reasonably procured, and at the close of said

month of March, by the distribution of said funds and supplies, had relieved every instance of distress then existing in Eastport, according to their best knowledge and belief, which had resulted from said conflagration. There then remained of said relief fund undistributed the sum of twenty thousand dollars which said executive committee invested in the town of Eastport four per cent bonds, where it still remains, said bonds being now in the possession of Edward E. Shead, treasurer of said relief committee. Since the said thirty-first day of March, 1887, the income of said fund of twenty thousand dollars so invested in the bonds of the town of Eastport has been used, under the authority of said relief committee and said town of Eastport, in the relief of actual destitution and distress existing in said town of Eastport, and the principal thereof has remained untouched. In many instances of the destitution and distress so relieved, losses by said fire had been one of the causes of the necessity for such relief.

Fifth : — And these defendants, further answering, say that, as many people in Eastport were left without homes by reason of the fire, it was determined by said committee, at an early date after the fire, to erect a relief building for their accommodation ; that by reason of unexpected delays in procuring the lumber, owing to the early freezing of the river, the actual erection of the building was delayed until late in the season, but that said building was finally erected at an expense of about five thousand dollars upon land belonging to the United States Government in said Eastport ; that said building was used for the benefit of sufferers by the fire so long as any actual destitution or distress resulting therefrom existed, but since that time has been used to furnish apartments and tenements, free from rent, to respectable and worthy poor persons in said town of Eastport, many of whom had met with losses by reason of said fire, and a portion of said building, during a part of the time, has been used as a place for keeping a primary school. And these defendants say that said building has been permitted by the United States Government to remain upon its lands without any payment of land rent whatever, and in its present position serves

the useful and benevolent purposes hereinbefore stated without any corresponding expenditure, and at the same time, that such building for purposes of sale or removal from the lot on which it stands would be without any value whatever.

Sixth : — And so these defendants say that the gratuities aforesaid given by benevolent persons, under the circumstances already stated, to the town of Eastport as aforesaid, for the relief of destitution, distress and suffering caused by the fire of October fourteenth, 1886, in that town, have been used and are being used under the authority of inhabitants of said Eastport, so far as practicable, directly for the purposes for which they were given, and in so far as they were not required and could not be used specifically for the primary purpose for which they were intended, they have been used, and are being used by said inhabitants, and under their authority, for purposes which approximate as closely and are as nearly akin to the purposes for which they were directly given as it is reasonable or practicable to do ; not in any way to relieve the town of Eastport from its legal obligation to support its poor, but as an additional fund to meet and provide for deserving instances of actual suffering, distress and destitution, as nearly related as possible to said fire, as the cause thereof, existing in that town ; and these defendants deny that the plaintiffs, or either of them, are losers or sufferers by the conflagration aforesaid in any such sense as to entitle them, or either of them, to make any claim whatever upon said fund.

Seventh : — And these respondents, further answering, deny that any portion of the funds and supplies contributed as aforesaid, have ever been, or are being used for any purposes whatever foreign to those for which they were given, and further deny all and all manner of illegal or improper acts wherewith they are in any way by the said bill charged, and invite the strictest investigation of all their acts and doings relating thereto, and are ready to maintain and prove their allegations herein as the court shall direct, and pray to be hence dismissed with their reasonable costs and charges in this behalf sustained.

Before filing of a replication, the defendants amended their answer by adding a demurrer to the sixth paragraph.

*A. MacNichol* and *G. A. Curran,* for plaintiffs.

*J. W. Symonds, D. W. Snow,* and *C. S. Cook,* for defendants.

The administration of these funds came properly and rightfully into the hands of trustees in Eastport, constituting, within such limitations as the court shall say, a domestic and local tribunal for that purpose. Their action has been fair and honest, and according to their best judgment and the bill does not allege, and the case does not show, ground on which, at the suit of these plaintiffs, such local administration will be superseded by the decree of the court.

The gifts were not directly to individuals who had suffered by the fire but to the persons to whom they were addressed, or who should rightfully act in the premises, for the due and proper relief of the suffering which the fire had caused. They were gifts to a community which had suffered great misfortune — and the manner of using the gifts was primarily and principally a matter for the community to decide.

The case abundantly shows that it was the judgment of this committee in April, 1887, that the worthy cases of distress caused by the fire had been relieved and had disappeared ; that circumstances no longer existed calling for the immediate distribution of the residue of the fund. The committees believed that to invest the remaining principal of the fund, and for the present to use only its income for the purposes of the trust, was a procedure more in harmony with the intention of the donors than any other course it was practicable to pursue.

All that the bill claims, substantially, or all that can be claimed in its support upon the evidence which has been taken, is that there should be an immediate distribution of this twenty thousand dollars instead of the use of the income of it only ; and such a distribution is demanded now, eight years after the fire, when it is obvious that the necessity for such distribution to relieve suffering caused by the fire cannot even be fairly claimed and when even the attempt to make such distribution in any such way as to meet the original purposes intended would be manifestly impracticable.

If the object of this fund was to relieve present suffering and to tide over distress caused by the fire, the lapse of time which has intervened would afford a strong argument in favor of the present use of the income only of the fund rather than of the unnecessary and impracticable attempt to distribute it.

Who are the parties plaintiff who ask for this distribution and under what circumstances do they ask? No donor of the fund applies, no person who gave a dollar or contributed an article makes this application to the court. The only description the plaintiffs give of themselves in their bill is that they suffered great loss by reason of the fire. No application was ever made to the town of Eastport, or to the city of Eastport, since it has become a city, to change the policy established by the committee in its management of this fund. No public meeting of citizens was ever called in Eastport to direct a different policy or to change the constituent members of the committee, no effort alleged or made by the plaintiff to induce either the city or the citizens of Eastport to change the result, but a direct application made in the first instance to the court to give the relief asked for by the plaintiffs solely upon the ground that they are losers or sufferers by the fire.

We submit that this ground is wholly untenable; that the court will recognize the right of the city of Eastport and its citizens, the community which received these gratuities, to deal in the first instance with the management of this fund; that the gifts themselves, and the manner in which they were made, contemplated the action of such agencies in the first instance; that all presumptions are in favor of the validity of the action of such a domestic tribunal; that the whole subject, within proper limitations, is submitted to their judgment; that good faith and reasonable judgment are all that could be required on the part of such committees or the municipality itself; that the exercise of such good faith and reasonable judgment removes them from the jurisdiction of the court, or rather, that the court will not assume jurisdiction over them so long as they keep themselves within these lines. When these committees and the municipality determine that there is no further immediate occasion for the use of this fund and that the purposes of the trust will be better served

by capitalizing it and using only its income, are they not fairly acting within their own province in making that decision; and is it for any person claiming merely the status of a sufferer by the fire to apply to the court to reverse that decision? It was an implied and an inherent term in the whole trust that the fund should be managed according to the judgment of a properly constituted committee. It is not the right of a sufferer by the fire to claim it merely in the right of such a sufferer, but only under such circumstances as commend themselves to the authorities making the distribution. It would be impracticable to deal with such a fund in any other way. The court cannot administer it, and if it should attempt it, by a receiver or other instrumentality, it is hardly to be supposed it could be so well done as by these local committees representing the best sentiment of the city.

The evidence, even that for the plaintiffs, shows that the committees have not violated faith or proceeded otherwise than according to their own best judgment. The case does not proceed upon the ground that the plaintiffs have exhausted other remedies, or have attempted to do so, before applying to the court. The municipality of Eastport, or a public meeting of citizens such as originally constituted the committees, would seem to be the first court of appeal from the committees in such a case as this; because while the whole matter is informal, and necessarily must be so, and understood and expected to be so, even by the donors, still it must be for the municipality and the citizens, the community which suffered the misfortune and which the donors intended to aid and relieve, to say in the first instance what is to be done with the gifts; and more than that, we submit to the court, that their action must control and prevail and be final except in extreme cases. Neither upon the averments of the bill,— and our answer includes a demurrer,— nor upon the evidence in the case, are the plaintiffs entitled to the relief for which they ask.

SITTING: PETERS, C. J., WALTON, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

WHITEHOUSE, J.   On the fourteenth day of October, 1886, the town of Eastport in this State was the scene of a destructive conflagration which caused temporary destitution and distress among the inhabitants.   News of the disaster awakened a widespread feeling of sympathy and a spirit of active benevolence which resulted in generous contributions of money and various articles of supplies from nearly all parts of New England and many points beyond, "for the relief of the sufferers by the fire." The total amount of the money thus contributed exceeded thirty-eight thousand dollars.   A relief committee of twenty was promptly organized at Eastport with appropriate officers and sub-committees for the purpose of making these voluntary offerings of the people at once available in relieving suffering and distress.   During the fall and winter following the fire, the committee received applications and systematically dispensed the supplies and disbursed the funds thus received to those who appeared to be in need of immediate relief in consequence of the fire.   A relief building was also erected at an expense of about five thousand dollars, taken from the relief fund, for the accommodation of those who were left homeless and shelterless by the fire.

But on the third day of March, 1887, the following resolution was adopted by the full committee : "Resolved, that the reduced condition of the relief fund together with the distressed condition of over fifty families comprising more than two hundred persons for which the committee is obliged to provide food, fuel and clothing for an indefinite period, forbid the appropriation of large sums of money aid in the future."   It appears, however, that at this time only three thousand dollars in money had been disbursed and that there was then in the hands of the finance committee an unexpended balance amounting to thirty-five thousand dollars, of which the sum of twenty thousand dollars was soon after invested in the four per cent bonds of the town of Eastport ; and on the thirty-first day of March it was voted by the committee that the twenty thousand dollars, so invested "be made a permanent fund, the interest of which to be used in

aiding towards the support of the town poor." On the twenty-
first day of April, 1889, it was voted that the finance committee
of the relief committee (the individual defendants in this
proceeding) in connection with the treasurer of the relief
committee, be authorized to act as trustees and to hold all bonds,
property, money," &c. ; and thereupon the committee "adjourned
sine die."

It is not in controversy that since that date, the treasurer of
the relief committee has been the custodian of the bonds in
which this fund of twenty thousand dollars was invested ; that
the income thereof has been regularly collected by him and
turned over to the town treasurer, and that it has then been
disbursed and distributed through the agency of the successive
overseers of the poor for the purpose of relieving actual destitu-
tion and distress in the town without special reference to the
inquiry whether the necessity for such relief was occasioned by
the fire or otherwise. The "relief building" since that date has
been used to furnish apartments and tenements free from rent
to the worthy poor, some of whom met with losses by the fire ;
and a portion of the building has been used as a school-house for
a public school.

The plaintiffs represent that they suffered great loss by the
fire, and complain on their own behalf, and in behalf of all others
of like interest with themselves, that they are aggrieved by the
refusal of the committee to distribute this generous fund among
the sufferers by the fire in accordance with the intention of the
donors. They contend that it should have been used to repair
the losses as well as to relieve the destitution and distress of
the sufferers by the fire, and that the appropriation of it as a
supplement to the pauper fund of the town is wholly unauthor-
ized for the reason that it aids the rich as well as the poor
without distinguishing the sufferers by the fire, by relieving all
alike of a part of the burden of taxation, and thus diverts these
charitable donations from the purposes and uses for which they
were designed.

The defendants say that these benevolent contributions came
properly and rightfully into custody of the relief committee
with an express or implied request that they should be distributed

in the sound discretion of the committee for the relief of actual suffering and distress caused by the fire ; that they labored faithfully and gratuitously to discharge the responsibility imposed upon them and distributed the supplies and disbursed the funds according to their best judgment for the real purpose for which they were donated, and that "in so far as they were not required and could not be used specifically for the primary purpose for which they were intended, they have been used and are being used by the inhabitants of Eastport for purposes which approximate as closely, and are as nearly akin, to the purpose for which they were designed as it is reasonable or practicable to do." They further say that it was never the intention of the committee that the income of the twenty thousand dollars should be used as a part of the pauper funds of Eastport, or as a substitute therefor, or that the receipt of any part of it should affect the persons in whose favor it was applied with pauper disabilities. They accordingly contend that the mere fact that the plaintiffs' applications for more of the funds than they have received have not been approved by the committee, does not give them the right to appeal from this domestic tribunal and call on the court to administer the fund.

The situation presents some novel inquiries which are not entirely free from difficulty. These prompt and liberal donations were acts of benevolence primarily designed undoubtedly for the immediate relief of the needy and distressed among the sufferers by the fire. The existence of a large surplus, after suitable relief had been afforded in all cases of actual distress, was probably a contingency not anticipated by the charitable donors. But in all the letters and telegrams received from them, it is either directly expressed or clearly implied that all contributions of money and supplies were to be applied "for the benefit of the sufferers by that fire." There is nowhere any intention of a purpose to bestow these gifts upon all the worthy poor of Eastport; and it may fairly be assumed that it was never in their contemplation to create a permanent fund for such public charitable use in that town. The result of these gratuities was to create a private charity for the benefit of a

designated class of persons who were already well-known or who were capable of being readily ascertained. "A good charitable use is 'public' not in the sense that it must be executed openly and in public, but in the sense of being so general and indefinite in its objects as to be deemed of common and public benefit. . . . It is public in its general scope and purpose, and becomes definite and private only after the individual objects have been selected." *Saltonstall* v. *Sanders*, 11 Allen, 456. The essential elements of a public charity are that it is not confined to privileged individuals but is open to the indefinite public. It is this indefinite, unrestricted quality that gives it its public character. *Donohugh's Appeal*, 80 Pa. 306; *Bangor* v. *Masonic Lodge*, 73 Maine, 428. "Private trusts," says Mr. Pomeroy, "are . . . for the benefit of certain and designated individuals in which the *cestui que trust* is a known person or class of persons. Public, or, as they are frequently termed, charitable trusts, are those created for the benefit of an unascertained, uncertain and sometimes fluctuating body of individuals, in which the *cestuis que trustent*, may be a portion or class of a public community, as for example, the poor or the children of a particular town or parish." 2 Pom. Eq. § 987. "In private trusts," says Mr. Perry, "the beneficial interest is vested absolutely in some individual or individuals who are, or within a certain time may be, definitely ascertained; and to whom, therefore, collectively, unless under some disability, it is, or within the allowed limit, will be competent to control, modify, or end the trust. Private trusts of this kind cannot be extended beyond the legal limitations of a perpetuity. . . . But a trust created for charitable or public purposes, is not subject to similar limitations, but it may continue for a permanent or indefinite time." 1 Perry on Trusts, § 384. In *Att'y Gen'l* v. *Price*, 17 Ves. 371, Lord Hardwicke draws this distinction between the creation of permanent trusts and the exercise of present benevolence, observing of the former: "It is to have perpetual continuance in favor of a particular description of poor, and is not like an immediate bequest of a sum to be distributed among poor relations."

The defendants, then, with other members of the committee of twenty, became trustees for the execution of a private trust for the benefit of the sufferers by the fire. The administration of the trust was in the first instance committed to their discretion; and having reference to the primary purpose of the contributions, after all cases of actual distress and need had according to their best judgment been amply relieved by them, the committee would doubtless have been justified, if such a course had been practicable, in restoring to the donors the unexpended balance. This would have been the obvious equity of the situation, but its observance was not possible; since by far the larger part of the contribution in money was received through the agency of municipal officers, from very small donations made by numerous persons whose names are now as unknown as the contributor of the " widow's mite."

In the administration of trusts under the general equity jurisdiction of the court, it is an old and familiar principle that if the original purpose of a public charity fail and there are no objects to which, under the specific terms of the trust the funds can be applied, the court may determine whether, in the event that has happened it was not the probable intention of the donor that his gift should be applied to some kindred charity as nearly like the original purpose as possible. This is commonly known as the doctrine of *cy pres*, which, in its last analysis is found to be a simple rule of judicial construction designed to aid the court to ascertain and carry out, as nearly as may be, the true intention of the donor. *Jackson* v. *Phillips*, 14 Allen, 539 ; 2 Perry on Tr. §§ 717-729, and cases cited. But if it appears that the gift was for a particular purpose only, and that there was no general charitable intention, the court cannot by construction apply the gift *cy pres* the original purpose. " There is a class of cases," says Mr. Perry, " where the gift is distinctly limited to particular persons or establishments, and upon a change of circumstances the doctrine of *cy pres* does not apply." 2 Perry Tr. § 725, note and § 726, and cases cited. It is not applicable to private trusts to the extent of authorizing the court to convert the funds donated for a private and particular purpose into a permanent

fund for a public charitable use of a different character.    *Coe* v.
*Washington Mills* 149 Mass. 543 ; 2 Pom. Eq. § 1027.

In the case at bar, there is no evidence of *mala fides* on the
part of the defendants, or any member of the relief committee, in
their management of the funds intrusted to their charge.    As
suggested by the learned counsel for the defendants, the appar-
ently unwarranted resolution of March third above quoted, was
doubtless designed to discourage the more persistent and less
meritorious applications.    But a careful examination of the evi-
dence reported leads to the conclusion that the committee
managed the fund under the influence of a too rigid construction
of its primary purpose, and not in the spirit of helpful benefi-
cence and liberality contemplated by the charitable donors.

It is clear, then, that the donors did not expect or intend that
any part of their contribution should be returned to them, or if
so, that it is not practicable to effectuate such intention.    It is
equally clear that they had no purpose to create a permanent
fund for a public and general charity in Eastport.    Their bounty
was distinctly limited to a specified class of persons then in
being.    As stated in some of the letters, it was "for the benefit
of the sufferers by the fire." . These sufferers or their legal rep-
resentatives, may still be found ; and if the privilege is granted,
it may safely be assumed that they will promptly apply for their
respective shares of the fund under any new scheme devised for
its distribution.    The trust has not failed.    The application of
a rule of construction analogous to the doctrine of *cy pres* dis-
covers a probable intention on the part of the donors that when
the primary purpose of their contribution should be accomplished,
the surplus, if any, should be used to repair the losses as well
as to relieve the immediate distress of the sufferers by the fire.
As the value of the property destroyed is estimated to reach an
aggregate of seven hundred and fifty thousand dollars, and four
hundred thousand dollars above all insurance, it would seem .
that the entire relief fund might have been distributed among the
sufferers under a scheme not greatly at variance with the prob-
able intention and wishes of the donors.

It may be true, as claimed, that there has been no definite purpose to employ this fund as a substitute for municipal taxation in the support of the town poor, but such a perversion of the charity will be the inevitable result, if the course adopted after the fund was capitalized shall be pursued in the future. Such a course is contrary to sound public policy, as tending to discourage the prompt exercise of similar acts of humanity and Christian benevolence in like exigencies in the future.

The situation, therefore, requires the court to assume jurisdiction of the matter and to appoint special masters in chancery, who after due notice of the times and places appointed therefor, shall receive applications from all the sufferers by the fire, hear evidence in regard to the nature and extent of their respective sufferings and losses, and thereupon devise a scheme for the distribution, among such sufferers, of the entire relief fund now available and which may be available for that purpose at the time of final decree. In determining the proportional part of the fund which each should receive, the masters may be justified in considering not only the actual distress and amount of loss suffered by each, but the difference in the degree of suffering entailed upon the rich and upon the poor, by the same amount of loss, and such other cognate matters as in their good judgment and discretion will aid in reaching conclusions most in harmony with the probable wishes and purposes of the donors under these circumstances; such conclusions to be reported to the court for acceptance and approval. The fund for distribution will consist of the four per cent bonds of the town of Eastport in which the sum of twenty thousand dollars was invested, with all income thereof not expended by the defendants prior to the service of this bill, and all interest which has accrued therein since the service of this bill; and also of the proceeds from the sale of the relief building. Such sale is to be effected by the defendants in conjunction with E. E. Shead, treasurer of the committee (who is to be made a party to this bill) under the direction of a single justice. The proceeds thereof, and also the bonds and income above named, will be held by the defendants and E. E. Shead, treasurer, until further order of the court.

Lemuel G. Downes of Calais, Benj. B. Murray of Pembroke, and Reuel Small of Deering, are to be appointed masters.

　　　*Bill sustained. Decree in accordance with opinion.*

HASKELL, J. I consider the donation an express, public, charitable trust. Express, because applied to a specific object. Public and charitable, because given for the relief of suffering visited upon an undetermined portion of a community, the result of conflagration. It was the generous out-pouring of money to relieve suffering humanity from misfortune that had befallen a city and made hundreds of its inhabitants, houseless, homeless, idle and sick in late autumn with the frosts of a northern winter hard by.

To these purposes it should have been promptly applied, not with stingy hand, but with such broad and generous spirit as moved the donation. It was not indemnity, but relief. Relief for suffering, whether occasioned by loss of property, or of health, or of employment that earned bread, albeit a result from the conflagration that worked a distress to incite the donation.

The proofs show that suffering entailed by the calamity still remains. The donors intended that it should long ago have been relieved. That intent must now be put in execution. I concur, therefore, in sending the cause to masters for an account of individuals still suffering from the effects of the fire, and to devise such equitable methods of distribution as seem best suited to carry out the purposes of the donation.