## BEGGS v. ALLRED, Atty. Gen.
### No. 13128.

Court of Civil Appeals of Texas. Fort Worth.

May 18, 1934.

Rehearing Denied June 15, 1934.

Wm. H. Flippen, of Dallas, and H. A. Turner, of Fort Worth, for appellant.

James V. Allred, F. O. McKinsey, and Elbert Hooper, all of Austin, for appellee.

POWER, Justice.

On March 12, 1934, James V. Allred, the legally qualified and constituted Attorney General of the state of Texas, filed a petition in the district court of Parker county complaining of George Beggs, Edward W. Taylor, Gertrude Farmer, and Harry T. Moore, Bishop of the Protestant Episcopal Church of the diocese of Dallas, Tex., alleging, in substance, that Edward Disney Farmer died on or about May 29, 1924, possessed of a large estate; that the said will was probated and the said George Beggs was appointed independent executor of the will and accepted said appointment and thereby became in possession of said estate.

It was further alleged that the said Farmer undertook to dispose of said property by will, and that the portion of the will necessary for consideration in disposing of this case reads as follows:

"Item Second. I direct that all the estate and effects whatsoever and wheresoever, both real and personal, to which I may be entitled, or which I may have power to dispose of at my decease, (except * * * property in Vancouver) be sold by my executor within five years after the date of my decease, for such consideration or considerations and upon such terms, whether for cash or part cash and the balance on credit, and subject to such conditions and in such manner in all respects as my executor shall think fit.

"Item Third. (This devises property in Vancouver to relatives, and is not involved in this proceeding.)

"Item Fourth. I devise and direct that all the net proceeds from the sale of my estate as herein provided shall under the direction of my executor, with the advice of my said sister, Gertrude Farmer, be divided and distributed and given to such charities and worthy objects as they, my executor and my sister, shall determine, remembering, however, the City of Fort Worth, in Texas, the City of Vancouver in British Columbia, Parker County, Texas, and England, places to which I have become attached. It is my intention to write to my said sister, indicating to her any special friends, charities, and worthy objects I may wish my executor with her advice to provide for, but all such provisions shall come out of my own estate and not from the estate herein devised to her. I desire my executor to pay particular and careful attention to the advice of my sister in the distribution of my estate, and to relieve her of all business worries pertaining thereto.

"Item Fifth. I direct that my executor, George Beggs * * * shall receive as his compensation for acting as executor of my will a commission of two and one-half (2½) per cent on the sale prices on all sales of property of my estate up to the sum of Fifty Thousand Dollars in commissions on such sales, and in addition thereto the further sum of five (5) per cent on all amounts collected as rents from said estate. * * * And if said commissions of two and one-half (2½) per cent on said sales do not amount to as much as Fifty Thousand Dollars, then an amount sufficient to make the sum received by said George Beggs Fifty Thousand Dollars shall be paid to him out of other monies belonging to my estate, it being my intention that the said George Beggs shall receive as

his compensation for acting as executor of my will the full sum of Fifty Thousand Dollars in addition to five (5) per cent of all rents collected by him.

"Item Sixth. (Directs that no action be taken in the probate court other than the probate of will and the return of inventory and appraisement.)

"Item Seventh. I authorize and empower my executor, if and whenever in the settlement of my estate and in carrying out of my wishes as herein expressed he deems it advisable at his discretion to sell the whole or any part of my real or personal property at public or private sale and upon such terms and subject to such conditions and in such manner in all respects as he shall think fit, and to execute and deliver all deeds, instruments of transfer and other writings necessary or proper to pass title thereto, but this provision shall in no way alter my direction that all of my estate, real or personal, except said building and lot in Vancouver, British Columbia, Canada, shall be sold by my executor within five years from the date of my decease.

"Item Eighth. (Nominates George Beggs as executor without bond.)

"Item Ninth. I further direct that should my executor, with the advice of my said sister, Gertrude Farmer, decide that they should give away any of my property in kind to any charity or for any purpose they may consider worthy, then they shall have the right to do so, and such property shall not be sold by my executor as herein directed."

The petition further pleads that the said George Beggs failed and refused to administer the estate in accordance with said will, thereby violating the trust and obligations recognized and assumed by him, more particularly alleging that the said George Beggs should have complied with the terms of said will in selecting charities, selling said property, and disposing of the profits within five years from the date of the death of said Farmer.

That on August 11, 1930, the executor conveyed to Harry T. Moore, bishop of the Protestant Episcopal Church of the diocese of Dallas, and his successors in office, in trust for the use and benefit of the Protestant Episcopal Church in the United States of the diocese of Dallas, a further portion of the property, valued at $450,000, and that said conveyance was made after the five-year period, and therefore without authority; that on June 23, 1930, the Fort Worth Undertaking Company transferred to Edward W. Taylor, for a consideration of $22,000 in cash and notes, certain property in the city of Fort Worth, and that said property was purchased and paid for in part and is being paid for out of the said estate of said Farmer, and that such transfer, being after the five-year period and for other reasons, is invalid.

The petitioner prays that the said George Beggs be divested of all interest in said estate, and that he be restrained and enjoined from selling or offering for sale any part of said property; that a receiver or receivers be named, and that the court make and enter a decree to secure a full and complete accounting of the properties of said estate and the management thereof; that the court make such order and decree herein for notice to charities that may be interested as will authorize and permit the charities and worthy objects in the communities of Fort Worth and Tarrant county, and of the communities of Weatherford and Parker county, and of Vancouver, British Columbia, and of England, to appear and plead their claims, and for such authority as may be requisite and necessary to fairly and finally determine the charities and worthy objects entitled to participate under said will, and that finally the court authorize and direct the distribution of said estate or parts thereof for the benefit of charities and worthy objects as stated in said will.

On March 12, 1934, the district judge of Parker county, in chambers and without notice, entered the following order:

"It is ordered that the defendant George Beggs, Jr., individually and as executor of the will of Edward Disney Farmer, be, and he is hereby, directed and required to prepare and file herein on the return day of the next term of this court, towit, on Tuesday, the 3rd day of April, A. D. 1934, a complete, detailed and itemized inventory of the property that has come into his hands belonging to said estate and his disposition and dealings therewith, as follows:

"(1) An itemized statement and inventory of all property belonging to the estate of the said Edward Disney Farmer which has come into his possession, either as temporary administrator or executor of the will of said Farmer, since the death of the said Farmer, together with the appraised value thereof.

"(2) A report and statement of the real estate belonging to said estate which he has sold or otherwise disposed of, together with the purpose and terms of each such sale and the consideration for the sale of each separate item of such property, whether such consideration consists of cash, note or notes, or other thing of value. And if any note or notes have

been or were received by said Beggs for the sale of any such property, to state what has been done with the same; that is, whether collected, and which have been collected; and if sold, which have been sold and for how much, and if any such notes are on hand and uncollected, give a detailed statement of such and state for what property same was received.

"(3) A detailed and itemized statement of all moneys, credits or other thing or things of value which have been received by the said defendant George Beggs, Jr., in his handling and administration of said estate as a part of said estate as it originally existed, or as rentals from said estate and interest on notes, securities, bonds or other obligations due and belonging to said estate.

"(4) An itemized statement of all expenditures or disbursements of money or property that has come into his hands as temporary administrator or as executor of said estate which belonged to said estate; to whom each and every such disbursement was made and the amount thereof, including all sums of money or property received or retained by him as compensation.

"(5) Said defendant George Beggs, Jr., by said report, will make a complete account of said estate and show the present condition of said estate, each item of property of said estate or that came into his hands from said estate, the description and value of same, and the cash and all property of every description now on hand and belonging to said estate.

"Said defendant George Beggs, Jr., will file such inventory and report in this court and in this cause, under oath, on the 3rd day of April, A. D. 1934."

On March 21, 1934, the district judge of Parker county, Tex., entered his further order, in chambers and without notice, as follows: "Upon the petition of the State of Texas filed herein, and in accordance therewith, it is ordered that the Clerk of the District Court of Parker County, Texas, issue a writ of injunction in all things as prayed for in such petition, restraining the defendant, George Beggs, Jr., from selling or in any way disposing of any property belonging to the estate of Edward Disney Farmer, of which estate he is executor by appointment of the County Court of Parker County, Texas, including real estate, personal property of any kind or character, and restraining him from paying out or disbursing any cash or assigning or transferring any notes, bonds or other property which have come into his hands by virtue of his being administrator or executor of the estate of the said Farmer, or that have come into his hands or possession by virtue of any dealings or transactions with or concerning said estate or any part thereof; and also restraining the said George Beggs, Jr., from further acting or discharging any of the duties or privileges as executor of the will of said Farmer, or from doing any act or things as such executor, until the further order of this court; except in so far as it may be necessary to preserve the estate."

From these orders George Beggs has appealed to this court, and offers the following propositions for consideration of the court:

"1. When the estate of a decedent is so given, in his will, that it may or may not be used for public charities without violating the directions of the will, the case is not one for enforcing the gift as a public charity in a suit by the attorney general for the public; and as the devising clauses of the will of Edward Disney Farmer, deceased, set out in plaintiff's petition, show that his executor may or may not, in his discretion, give testator's estate to public charity, no right was created by said will in any public charity to any part of the testator's estate, such as would entitle the prosecution of this suit by the Attorney General of Texas in its behalf; or that could form the basis for any orders affecting the executor in the discharge of his duties.

"2. If a testator devises his estate to charity generally and empowers his executor to determine for what charitable purposes it shall be used, and to select the beneficiaries thereof—and the will contains no other definite manner of selection—it is a personal trust, and a court of equity does not possess the jurisdiction or power to determine the purpose, or to select the beneficiaries; and as the will of E. D. Farmer, deceased, set out in plaintiff's petition, contains no specific devises, but shows merely a general intent to give his estate to any charity his executor, with the advice and consent of his sister, shall select, or for any purpose that they may deem worthy, the trust reposed in his executor and sister is a personal trust, and a court of equity is without jurisdiction or power to determine the purpose, or select the beneficiaries.

"3. If a testator devises his estate to charity generally, without naming the class of beneficiaries who shall share in the estate, or the purpose of the gift, and the will contains no definite testator's purpose, other than that his executor is given unlimited discretion in this respect, the device is so vague and uncertain that a court of equity has not the jurisdiction or power to declare the purpose

or select the beneficiaries; and as the will of E. D. Farmer, deceased, set out in plaintiff's petition, designates no class of beneficiaries who shall share in his estate and designates no manner of selecting the class, or the purpose of the gift, other than that his executor is given unlimited discretion in this respect, it is so vague and uncertain that a court of equity is without jurisdiction or power to declare his purpose or to select the beneficiaries of his estate."

The question of validity of the will need not be considered, but only the question of authority to prosecute suit. In this connection it is clear that it must appear on the face of the record that the state is entitled to prosecute; otherwise the litigation fails. The state represents the public and is properly a representative of the public when and if there is a public right. It is stated in the case of Attorney General v. Soule, 28 Mich. 153: "When the property or fund is so given that it may or may not be used for charity, or may or may not be used for a charitable object of a public character, without violating the directions of the will, the case is not one for enforcing the gift as a charity, in a suit by the attorney general for the public."

That case involved the construction of a will. The testator directed his executors to set apart a sum "for the establishment of a school at Montrose * * * for the education of children, to be expended according to the direction of my said executors." The executors did not execute the trust, and a suit was filed by the Attorney General to enforce its execution on the theory that it was a public charity. The court held in that case in accordance with the paragraph quoted that it was not such a trust as would authorize the Attorney General to institute the suit.

In 11 Corpus Juris, p. 367, it is said: "The charities which the attorney general can sue to enforce or conserve must be charities of a character so public as to interest 'the entire public.' "

In Perry on Trusts, vol. 2 (6th Ed.) par. 732, it is said: "But where a gift is not a public charity, but is to a school that is not free and open to the general public, the attorney general cannot maintain an information or bill."

Illustrating further the principles upon which these statements are expressed, it is stated in vol. 2, Perry on Trusts (6th Ed.) par. 711, p. 1163, as follows: "There are other cases where legacies are given in trust for purposes that are clearly charitable; but these purposes are joined with words that author-

ize the trustee to expend the fund for general purposes which are not charitable. If the fund is not apportioned by the donor, the trustees may expend the whole for one purpose or another which is not charitable, and at the same time execute the exact power given them under the will. In such cases, courts cannot establish and administer the fund as charitable. For example, a gift for such charitable and other purposes as the executor might think fit cannot be sustained as charitable; for the executors have power by the will to apply the whole to purposes other than charitable. So a gift to executors in trust to dispose of it at their pleasure, either for charitable or public purposes or to any person or persons in such shares as they should think fit, was not sustained for the same reason. * * * So a trust for benevolent purposes was not sustained, as benevolence may or may not be charitable in the law."

These quotations are further confirmed in the following cases: Troutman v. De Boissiere Odd Fellows' Orphans' Home, 66 Kan. 1, 71 P. 286; Herbert S. Hadley, Attorney General, v. Forsee, 203 Mo. 418, 101 S. W. 59, 14 L. R. A. (N. S.) 49; City of Philadelphia v. Masonic Home of Philadelphia, 160 Pa. 572, 28 A. 954, 23 L. R. A. 545, 40 Am. St. Rep. 736: People v. Powers, 147 N. Y. 104, 41 N. E. 432, 35 L. R. A. 502; Old South Soc. v. Crocker, 119 Mass. 1, 20 Am. Rep. 299; Doyle v. Whalen, 87 Me. 414, 32 A. 1022, 31 L. R. A. 118.

Referring to appellant's second proposition, it is said in 5 R. C. L. p. 340, par. 71: "If a trustee is appointed by the testator, and the will shows that the object of the devise, though expressed in general terms, is for a charitable use, the trust will be declared valid. In such a case, the duty devolves upon the trustee of devising a scheme for carrying the trust into effect. * * * But if a trustee is not appointed by the testator, and the will does not declare the manner in which the devise is to be made effectual, equity will not administer the trust. The reason a trustee is allowed to enforce a trust, the object of which is expressed only in general terms, is that in exercising his discretion he carries out the intention of the testator. But where there is no trustee appointed to exercise this discretion in devising a scheme for the execution of the trust, the court of equity can look alone to the will, and, if it does not show the intention of the testator, parol testimony is inadmissible, and the trust must fail. Hence, where a charity does not fix itself on a particular object, but is general and indefinite, and no plan or scheme is prescribed, and no discretion is given in the will to select the

beneficiaries, it does not admit of judicial administration, and must fail."

The same principle is further expressed in Perry on Trusts (6th Ed.) vol. 2, par. 721, as follows: "If a testator gives an estate to trustees to be applied to charity generally, or to such charitable purposes and institutions as they in their discretion shall judge best, and the trustees die before the testator, or makes no selection of the objects, or application of the fund, or decline to act, the court will be governed by the intent of the donor, to be gathered from the interpretation of the whole instrument, in determining the question whether they can appoint new trustees to exercise the power and discretion given to the trustees named in the will."

And in paragraph 731, it is said: "If the power given to the first trustees is a personal trust and confidence, the court should not appoint other trustees to exercise that power, contrary to the intention of the donor."

In 5 R. C. L. p. 312, par. 27, the rule is expressed as follows: "Whenever a power is of a kind that indicates a personal confidence, it must prima facie be understood to be confined to the individual to whom it is given and will not, except by express words, pass to others to whom, by legal transmission, the same character may happen to belong"—citing Hadley v. Forsee, 203 Mo. 418, 101 S. W. 59, 14 L. R. A. (N. S.) 49; and Gambell, Adm'r, v. Trippe, 75 Md. 252, 23 A. 461, 15 L. R. A. 235, 32 Am, St. Rep. 388, by the Maryland Court of Appeals.

In the case of Fontain v. Ravenel, 58 U. S. (17 How.) 369, 382, 15 L. Ed. 80, the court had before it the question of the construction of a will containing these provisions: "I authorize and empower my executors or the survivor of them, after the decease of my said wife, to dispose of the same (the residue of his estate) for the use of such charitable institutions in Pennsylvania and South Carolina, as they or he may deem most beneficial to mankind, and so that part of the colored population in each of the said states of Pennsylvania and South Carolina shall partake of the benefits thereof."

In this case the testator's wife survived the other executors, and then died, without having executed the trust, and the question before the court in that case was whether the trust was a personal trust that could not be exercised by any one except the executors, or whether or not the court had the power to select the charities which should share in the estate. The court said:

"The testator was unwilling to give this discretion to select the objects of his bounty, except to his executors. He relied on their discrimination, their judgment, their integrity, and fitness, to carry out so delicate and important a power. He made no provision for a failure, in this respect, by his executors or the survivor of them, nor for the contingency of their deaths before Mrs. Kohne's decease. They died before they had the power to appoint, and now what remains of this bequest, on which a court of chancery can act?

"There must be some creative energy to give embodiment to an intention which was never perfected. Nothing short of the prerogative power, it would seem, can reach this case. There is not only uncertainty in the beneficiaries of this charity, but behind that is a more formidable objection. There is no expressed will of the testator. He intended to speak through his executors or the survivor of them, but by the acts of Providence this has become impossible. It is then as though he had not spoken. Can any power now speak for him, except the parens patriæ? Had he declared that the residue of his estate should be applied to certain charitable purposes, under the statute of 43 Eliz., or on principles similar to those of the statute, effect might have been given to the bequest, as a charity, in the state of Pennsylvania. The words as to the residue of his property were used in reference to the discretion to be exercised by his executors. Without their action, he did not intend to dispose of the residue of his property."

The principles stated in the case of Fontain v. Ravenel is further confirmed in the case of Hadley, Attorney General, v. Forsee, 203 Mo. 418, 101 S. W. 59, 14 L. R. A. (N. S.) 49.

The will provides that the property "be distributed and given to such charities and worthy objects as they, my executor and my sister, shall determine," to be limited, however, to certain localities as set out in the will. The will further permits: "That should my executor, with the advice of my said sister, Gertrude Farmer, decide that they should give away any of my property in kind to any charity or for any purpose they may consider worthy, then they shall have the right to do so, and such property shall not be sold by my executor as herein directed."

█ Applying the principles of law quoted to the Farmer will, it is the judgment of this court that the will does not provide for a public charity, that is, a charity designated for the public good generally, or a class of the public. It is further the opinion of this court that the trust imposed on the executor is a

personal trust, and that a court of equity would have no power or authority to select charities or worthy objects to whom the property could be distributed. This trust reposes only in the executor with such aid and sug-. gestions from Gertrude Farmer as the will indicates.

It is contended by appellee that no appeal will lie from the order of the court exacting an accounting. It is unnecessary for the court to pass on this question, its effect necessarily follows from conclusions reached by the court on the injunction order. The Attorney General being without authority to institute the proceedings, it is ordered that the injunction be dissolved.