JOSIAH STONE & others *vs.* INHABITANTS OF FRAMINGHAM.

A testator bequeathed a fund to the incorporated trustees of an academy, to spend its income in reducing the price of tuition of pupils to a certain sum per quarter, and apply any surplus for the benefit of the academy as they might choose, the capital to go to his heirs if ever the corporation should be dissolved. After the trustees had administered this trust for many years, the legislature passed a statute, subject to their acceptance and to that of the town, authorizing them to transfer their property, including trust funds, to the town, the net income to be applied to support a public high school. The statute was accepted, and the trustees transferred all their property, including this trust fund, to the town, and ceased thenceforth to exercise any of the functions of a corporation. In a supplemental statute, passed the next year, the legislature styled the inhabitants of the town trustees of the academy. *Held*, in a suit in equity brought by the testator's heirs to recover the fund, nineteen years after its transfer to the town, (1) that the corporation was dissolved, and the fund forfeited to the plaintiffs, within the meaning of the testator; but (2) that they could recover interest only from the date of filing the bill, in the absence of proof of any previous demand or adverse claim by them.

MORTON, J. The third clause of the will of Micah Stone is as follows: "I give and bequeath to the trustees of Framingham Academy three thousand dollars as a fund for the benefit of pupils belonging to the town of Framingham. It shall be the duty of said trustees to expend the interest of said fund in reducing the tuition of said pupils as low as may be, but not to a less sum than three dollars per quarter, and the balance of interest in any one year, if any, may be appropriated for the benefit of the academy as the trustees may choose. The principal shall never be expended; and if ever the corporation should be dissolved, said

principal shall be divided among my heirs at law of the whole blood, as intestate estate." The will was proved in December 1838. The trustees of Framingham Academy were incorporated by an act of the legislature passed March 1, 1799. St. 1798, *c.* 79. 2 Special Laws, 287. They maintained an academy in Framingham until 1851, and accepted and administered the trust until that time.

In 1851 the legislature passed an act authorizing the trustees to transfer all their property, including all trust funds, to the inhabitants of the town of Framingham, requiring the inhabitants of the town to establish and maintain a high school such as is required in the Rev. Sts. *c.* 23, § 5, and authorizing them to apply to the support of such school the net income of the property and funds conveyed to them by said trustees. St. 1851, *c.* 178. This act was to take effect as soon as it was accepted by the said trustees and by the inhabitants of the town. The trustees and the town accepted the act; and on the 2d day of January 1852 the trustees conveyed to the town all the property belonging to them, including the trust fund in question. The income of the fund has been since that time appropriated by the town to the support of a high school. It is understood that the trustees of the academy have not since then exercised any of the functions of a corporation.

The heirs at law of Micah Stone claim that by these proceedings the trust fund was forfeited, and bring this suit in equity on September 13, 1870, to recover it of the town. The defendants contend that the corporation was not dissolved, but that the inhabitants of the town were made the successors of the trustees of Framingham Academy, and as such are competent and entitled to hold the trust fund.

It seems to us clear that the inhabitants of the town cannot, in any just sense, be deemed to be the successors of the trustees. They have no power to perform the duties or exercise the functions of the corporation established by the St. of 1798. They cannot establish or maintain an academy such as is provided for by that act, and for the purpose of maintaining which the corporation was created. They are only authorized to maintain a high

school, which is a part of the public school system, and is essentially different from an academy. *Jenkins* v. *Andover*, 103 Mass. 94. They cannot administer the trust fund according to the conditions upon which it was given to the corporation. They can only apply the income of it to the support of a public high school, an appropriation which is clearly contrary to the intentions of the giver.

The mere fact that, in a supplemental act, (St. 1852, *c.* 34,) the inhabitants of the town are spoken of as " trustees of Framingham Academy," does not impair the weight of these considerations. We cannot construe the two acts as intending to confer upon the town the power to perform the duties and exercise the functions of the private corporation. It is, therefore, not within the power of the town to hold this fund upon the trusts created by the testator, as successors of the original donees.

The modes in which a private corporation may be dissolved are not well settled by legislative or judicial decisions. It is however clear that a dissolution will be effected by a surrender of its franchises and its acceptance by the government. *Revere* v. *Boston Copper Co.* 15 Pick. 351. *Folger* v. *Columbian Insurance Co.* 99 Mass. 267.

In the present case, there was not a formal surrender of the franchise of the corporation and acceptance by the legislature. But the effect of the acts of the legislature accepted by the trustees, and of their conveyances in pursuance thereof, was to deprive them, irrevocably, of all the property of the corporation, and to take away the power of performing the principal duties which devolved upon the corporation. It is clear from the general scope of the act of 1851, that it was the understanding and purpose of the legislature, of the town, and of the trustees, that the academy should be discontinued and the high school substituted for it. In accordance with this purpose, the trustees have since then ceased to perform any of the duties or functions created by their act of incorporation; and as we have before seen, no provision is made for any successors who have the power to perform these duties. The action and purposes of the parties were inconsistent with the further continuance of the corporation.

We are inclined to the opinion that these proceedings operated as a dissolution of the corporation for all purposes. But if not, we think it clear that it was dissolved within the meaning in which the testator used that term. If the corporation retains a technical existence, it is practically dissolved, especially so far as the testator's bequest is concerned. It has permanently ceased to maintain the academy for the benefit of which his bounty was intended. It has surrendered its power to administer the trust fund according to his will, without providing for any successors who can execute the trusts. The purposes for which it was created can no longer be answered, and it has substantially ceased to exist as a corporation. 2 Kyd on Corporations, 467. *Slee* v. *Bloom*, 19 Johns. 456. We are of opinion that it was dissolved within the meaning of the testator, that the bequest has been forfeited, and that the heirs at law can maintain this suit.

As no demand or other adverse claim is proved before the institution of the suit, we think they are entitled to recover interest only from the time of filing their bill.          *Decree accordingly.*

*F. F. Heard*, for some of the heirs.

*H. H. Currier*, (*H. C. Hutchins* with him,) for other heirs

*T. C. Hurd*, for the defendants.