CHARLES O. BANCROFT, et als.,

*vs.*

MAINE STATE SANATORIUM ASSOCIATION, et als.

Cumberland.     Opinion March 26, 1920.

*Trust.   Rule against perpetuities.   Forfeiture.   Failure of specific trust.   Resulting trust by implication of law.   Cy pres.   General charitable purposes excluded.*

On February 28, 1910, Eleazer D. Chamberlin of Newton, Massachusetts, placed in the hands of three residents of Portland, Maine, a fund of two hundred thousand dollars, under a declaration of trust signed by the trustees, the purpose being to invest and reinvest said fund and to pay over semi-annually the net income thereof to the Maine State Sanatorium Association, of Hebron, solely for running expenses, for the period of forty years and then to pay over the principal fund freed from all trusts, but subject to certain conditions.

On October 1, 1911, and each alternate October 1 thereafter, the trustees were to ascertain whether the Association was free from debt which it had not sufficient cash or good bills receivable to off-set.   If not, the trustees were to give notice in writing to the Association and if such deficit was not discharged within three months thereafter, then said fund with its accumulations should be paid over to Eleazer D. Chamberlin, if living, and if not living, then in equal shares to Theodore Chamberlin and Walter S. Fox or to their then heirs at law.

The trustees paid over the income to the treasurer of the Association until October, 1915, when the Association conveyed all its property, real and personal, including its right, title and interest in this endowment, to the State of Maine, and the State has continued to maintain and manage the Sanatorium since that time under R. S., Chap. 146.   The donor died testate on August 7, 1914, and Walter H. Roberts was appointed sole executor in Maine on September 26, 1917.

Upon a bill in equity brought by the endowment trustees asking for a construction of the trust and a determination of the party or parties to whom the fund should now be paid, it is held,

1.   That the validity of the trust in favor of the Association is not controverted, although the legal title was to remain in the trustees for a period of forty years before it could be conveyed to the beneficiary and then only on the prescribed conditions as to freedom from debt.   That fact does not however offend the rule against perpetuities because it is the time of vesting and not the period of

continuance that concerns that rule. On February 28, 1910, the legal title vested in the trustees and the beneficial title in the Association, this latter however subject to being divested on the occurrence of the event specified.

2. In determining whether a forfeiture for non-payment of indebtedness should occur at any time, the broadest possible powers and discretion were conferred upon the trustees, and in the absence of bad faith, fraud or mere arbitrary action on their part their conclusions were final and binding upon all parties in interest.

3. The trustees found that no forfeiture took place, on October 1, 1911, October 1, 1913, or October 1, 1915, and after a full and careful examination of all the testimony considered in the light of the declaration of trust, their finding is held to be correct in fact and conclusive in law. No forfeiture was created.

4. There was however a failure of the trust due to the transfer of all the property of the Association to the State and the consequent cessation of business on the part of the Association. There was an implied condition that the Association should continue in operation and carry on its own work in its own way. The State, since the transfer, has maintained and managed the institution through a board of trustees appointed by the Governor. The Association for whose sole benefit the gift was made has virtually ceased to exist.

5. As the trust was limited to that particular Association, and that Association was not intended as a mere conduit for the application of the fund to a general charitable purpose, the failure of the cestui que trust worked a failure of the trust itself. Under such circumstances in this class of gifts, if the donee fails the gift itself fails. In whom then is the title, the trust having failed?

6. Theodore Chamberlin and Walter S. Fox are not entitled to the fund under the limitation over because the only event which could cause their contingent interest to materialize was a previous forfeiture, and no forfeiture has occurred. A discussion of the validity of the limitation over as offending the rule against perpetuities is therefore not involved.

7. The claim of the State of Maine cannot be sustained. The Sanatorium Association had no assignable interest in the fund and therefore its attempted assignment to the State was futile.

8. Nor can the doctrine of cy pres be successfully invoked in behalf of the State. In order to apply that doctrine two prerequisites must exist, first a failure of the specific gift, and second, a general charitable intent disclosed in the instrument creating the trust. The first element exists here but not the second. A general charitable purpose is clearly excluded.

9. It follows that this fund now belongs to the estate of the donor as a resulting trust. The specific trust having failed a trust results by implication of law to the executor under the will. His claim is therefore sustained.

10. Under the circumstances of this case it is proper and it is therefore ordered that costs and reasonable counsel fees be fixed by the sitting Justice who shall make the final decree, be paid by the executor, and charged by him in his account of administration.

Bill in equity to determine the ownership of a fund of two hundred thousand dollars and accrued interest amounting to more than thirty thousand dollars, in the hands of the plaintiffs as trustees. There were several defendants. On written motion said bill was dismissed in so far as it was brought against Walter H. Roberts, Walter S. Fox and Theodore Chamberlin, executors of the will of Eleazer D. Chamberlin, appointed in Massachusetts, and also said bill was dismissed in so far as it was brought against Hannah Williams, deceased, without costs in each instance. The bill was amended on written motion by inserting two additional paragraphs. Said bill as amended was further amended by striking out in the commencement of said bill as amended the words "and Frank E. Williams and George H. Williams of said Boston, heirs-at-law of said Eleazer D. Chamberlin."

Bill taken pro confesso, for want of appearance, as to defendants, Maine State Sanatorium, Olive Ann Bickford, Gardner Chamberlin, Frederick Eleazer Horne, and Frank B. Williams and George H. Williams, executors of the will of Hannah Williams.

The case was heard upon bill, answers, replications and evidence. At the conclusion of the evidence, by agreement of parties, the case was reported to the Law Court for determination upon bill, answers, replications, stipulations and so much of the evidence as was legally admissible.

Bill sustained. Decree in accordance with opinion.

Case stated in the opinion.

*Harry R. Virgin,* for complainants.

*Guy H. Sturgis,* Attorney General, for State of Maine.

*Ropes, Gray, Boyden & Perkins, C. R. Clapp* and *Verrill, Hale, Booth & Ives,* for Walter S. Fox and Theodore Chamberlin.

*Hollis R. Bailey* and *Sidney St. F. Thaxter,* for Walter H. Roberts, executor.

*Thomas L. Talbot,* for Walter H. Roberts, and Walter S. Fox, trustees.

SITTING:   CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

CORNISH, C. J.   Eleazer D. Chamberlin a wealthy citizen of Newton, Massachusetts, on February 28, 1910, placed in the hands of Charles O. Bancroft, Charles H. Payson and Franklin C. Payson, all

of Portland, Maine, a fund of two hundred thousand dollars in trust for the uses and purposes and subject to the conditions, limitations and stipulations expressed in a certain declaration of trust of that date, signed by said trustees.

The uses and purposes were as follows: ''To invest and reinvest said fund in interest bearing securities and property and to pay over the net income thereof semi-annually, and oftener if the trustees for the time being so determine, to the treasurer for the time being of the Maine State Sanatorium Association, a corporation located at Hebron in the State of Maine, for the period of forty years from the date hereof, and then to pay over the principal comprising said fund to the said Maine State Sanatorium Association freed from all trusts. Said payments of income and principal, however, are subject to the conditions, limitations and stipulations herein stated and set forth.''

Among the conditions, limitations and stipulations set forth in the declaration of trust are the following:

''Third:—Said trust and fund shall be known as the 'E. D. Chamberlin Endowment Fund,' and the principal of said fund shall always be kept intact and no part of said principal shall be expended or used for the purposes of said Sanatorium, and no loan of any part of said fund shall ever be made to said Sanatorium Association.''

''Fourth:—All income paid over to or for the benefit of said Sanatorium Association shall be used by it solely for the annual running expenses of said Sanatorium Association for the cure and prevention of tuberculosis at Hebron in its present location, and no part of said income shall be used for construction purposes, or for the purchase of real estate, furnishings, for interest, or for any other purpose whatever except that above stated.''

''Eighth:—And in compliance with the express direction of said Eleazer D. Chamberlin, the donor of this fund, no part of said income or of said principal fund shall be paid over to or for the benefit of said Maine State Sanatorium Association after October 1, 1911, except as hereinafter provided unless said Maine State Sanatorium Association shall on said date be wholly and absolutely free from debt of every kind, which it has not sufficient cash in hand or bills receivable from solvent persons or corporations to fully off-set, and no part of said income or of said principal shall be paid over to or for the benefit of said Sanatorium Association after October first of each alternate year after 1911 except as hereinafter provided, unless said

Sanatorium Association shall on said date be wholly and absolutely free from debt of every kind, which it has not sufficient cash in hand or bills receivable from solvent persons or corporations to fully off-set, and so on until said fund has been paid over to said Sanatorium Association as above provided at the end of the said forty (40) year period, or said fund has been paid over as hereinafter provided."

"Ninth:—The trustees hereunder for the time being shall satisfy themselves that no such indebtedness exists on the dates above mentioned, in any way or manner which seems best and conclusive to them or they may accept the sworn statements of the officers of said Sanatorium Association of its financial condition as true; but no income from said fund or no part of the principal of said fund shall be paid to said Sanatorium Association unless the trustees of said fund for the time being are unanimously of the opinion that upon the dates above specified no indebtedness against said Sanatorium Association exists as outstanding which it has not sufficient cash in hand or bills receivable from solvent persons or corporations to fully off-set."

"Tenth:—If at any of the times above mentioned, the trustees for the time being are of the opinion that the said Sanatorium Association is indebted in sums for which it has not cash in hand or bills receivable due from solvent persons or corporations to off-set the same, said trustees shall give notice in writing to said Sanatorium Association of said opinion, and in case that within three (3) months thereafter, said indebtedness is not paid and cancelled and satisfactory evidence thereof submitted to said trustees in writing by said Sanatorium Association, then said principal fund and any accumulations thereof shall forthwith be paid over to said donor, Eleazer D. Chamberlin, if living, and if not living, said fund and its accumulations shall be paid over in equal shares to Theodore Chamberlin of Concord, Massachusetts, nephew of said Eleazer D. Chamberlin, and Walter S. Fox of Boston, Massachusetts, or to their then heirs at law, said heirs at law taking by right of representation, for their own use, freed from all trusts. Said Sanatorium Association shall be entitled to receive said payments of income or principal if said trustees are satisfied that all said indebtedness has been paid or cancelled within said three (3) months' period."

"Eleventh:—The conclusions of the trustees for the time being on all the foregoing matters shall be final and binding upon all parties interested in said trust fund, but said trustees are authorized in case

of doubt as to their duties, or rights, or the rights of the beneficiaries to petition the Courts for instructions and further orders."

The Maine State Sanatorium Association, the beneficiary under this declaration of trust, was a corporation organized under the general laws of this State on December 26, 1900, its purposes being, as the certificate of organization recites: "to establish and maintain a public institution or institutions for the isolation, treatment and cure of persons affected with pulmonary disease, and to exert its influence toward the lessening of the prevalence of tuberculosis." The Association had established such an institution at Hebron, had acquired a large amount of property both real and personal, and was in active and full operation when this trust gift was made by Mr. Chamberlin.

The trustees named in this trust agreement entered upon the discharge of their duties immediately after its execution, received and managed the trust funds and paid over the income to the treasurer of the Association until October, 1915, when the Association conveyed all its property, real and personal, to the State of Maine, together with all its right, title and interest in the Chamberlin Endowment Fund, and the State of Maine has continued to maintain the Sanatorium since that time under the provisions of Public Laws, 1915, Chap. 351, now R. S., (1916), Chap. 146. After this transfer to and assumption of management by the State, the trustees of the Chamberlin fund made no further payment of income to the Sanatorium except the sum of $613.69 on October 14, 1915, representing coupons matured and paid on or prior to October 11, 1915, together with interest on bank balance. The fund with its accumulated income amounts now to more than two hundred and thirty thousand dollars.

Mr. Chamberlin died at Boston, Massachusetts, testate on August 7, 1914. Walter H. Roberts of Harvard, Massachusetts, was duly appointed sole executor in Maine on September 26, 1917, and Walter H. Roberts and Walter S. Fox were appointed trustees under the will in the Commonwealth of Massachusetts.

The trustees of the Chamberlin fund bring this bill in equity asking for a construction of the declaration of trust, a determination of the question whether the interest of the Sanatorium therein and in the income has terminated, a determination of the rights of the respective claimants to said fund and its accumulations and full instructions as to their duties as trustees in the premises.

All parties in interest are before the court and the several claimants have asserted in their answers and have reasserted in argument the bases of their several claims.   These claimants are three in number, viz:  First, Walter S. Fox and Theodore Chamberlin in their individual capacities by reason of the limitation over contained in the tenth clause of the declaration of trust; second, the State of Maine as intervenor, and third, Walter H. Roberts as executor of the will of Eleazer D. Chamberlin, in the legality and validity of whose claim Walter H. Roberts and Walter S. Fox, as trustees under the will, join.

The various propositions involved in the decision of this case can best be considered and determined under the following general heads.

First:   The validity of the trust as between the donor and the Sanatorium Association

Second:   The termination of the trust through forfeiture.

Third:   The termination of the trust through failure.

Fourth:.  The present ownership of the trust fund.

I.   Validity of the trust as between the donor and the Sanatorium Association.

The validity of the trust as between the donor and the Sanatorium Association is .not controverted.   We are not now considering the validity of the limitation over to Theodore Chamberlin and Walter S. Fox or to their heirs at law in case of forfeiture for non-payment of indebtedness by the Sanatorium provided in item ten of the declaration of trust.   That is a distinct legal proposition.   But, so far as the trust created in favor of the Association itself is concerned it is not and cannot be successfully attacked.   The rule against perpetuities or as it is less frequently but more expressively termed, the rule against remoteness, is defined as follows:   "It is the grant of property wherein the vesting of an estate or interest is unlawfully postponed. The law allows an estate or interest, and also the power of alienation, to be postponed for the period of a life or lives in being and twenty-one years and nine months thereafter; and all restraints upon the vesting that may suspend it beyond that period are treated as perpetual restraints and void, and estates or interests that are dependent on them are void."   *Pulitzer* v. *Livingston,* 89 Maine at 364;  *True R. E. Co.* v. *True,* 115 Maine at 541.   In the case at bar there was no postponement so far as the trustees and the Association were concerned. Upon the delivery of the securities to the trustees and the execution of the declaration of trust by them, the legal title at once vested in

them and the beneficial title in the Association. True the legal title was to remain in the trustees or their successors for a period of forty years before it could be conveyed to the beneficiaries, and then only on the prescribed conditions as to freedom from indebtedness. But that fact did not offend the rule against perpetuities. It is the time of vesting and not the period of continuance, it is the beginning and not the ending which concerns that rule. 21 R. C. L., page 291; Gray on Perpetuities, Section 205; *Pulitzer* v. *Livingston*, 89 Maine, 359, 365; *Andrews* v. *Lincoln*, 95 Maine, 541; In *re Johnston's Est.*, 185 Pa. St., 179, where the trustees were to hold for seventy-five years.

In the pending case the legal estate vested in the trustees on February 28, 1910, and a valid trust was thereby and then created. So far as the beneficial interest was concerned that vested in the Association at once, subject however to be divested on the happening of a certain event. It was subject to forfeiture, to a condition subsequent, dependent upon the financial condition of the institution at certain specified periods; and this brings us to the second stage in our inquiry.

II. Was there a forfeiture?

The donor evidently did not intend to give his assistance to this institution unless it kept itself free from indebtedness of every kind. The declaration of trust so states. The income from the fund was to be devoted solely to the annual running expenses, and it was left to the institution itself or to its friends to provide whatever additional amount might be necessary to meet and discharge all indebtedness, as often as once in two years, and to begin the next two-year period with a clean slate or with quick assets in the form of cash in hand or good bills receivable sufficient to meet all outstanding indebtedness. The first test date was October 1, 1911, and the others followed in alternate years thereafter, viz: October 1, 1913, October 1, 1915, and so forth, during the entire term of forty years. But in determining the existence of such indebtedeness and also its subsequent discharge, the broadest possible powers and discretion were conferred upon the trustees, upon whose integrity, judgment, broadmindedness and desire to carry out his wishes Mr. Chamberlin obviously reposed the most implicit confidence. They were to satisfy themselves of the facts in any manner which might seem best to them and their conclusions were to be final and binding on all parties in interest. When the trustees were satisfied, the donor was satisfied, and so were the conditions of the trust. It was legally competent for the donor to

give this latitude to the trustees, and in the absence of bad faith, fraud or mere arbitrary action on their part, it is the duty of the court to accept their conclusions as final, and thus give effect to the wishes of the creator of the trust.   Estate of Wells, 156 Wis., 294; *Read* v. *Patterson*, 44 N. J. Eq., 211; *Larkin* v. *Wikoff*, 75 N. J., Eq., 462, affirmed 78 At., 1134; *Tabor* v. *Brooks*, L. R., 10 Ch. Div., 273. Let us now consider the facts of the pending case on the question of forfeiture.   Three periods are under discussion.

The financial condition of the Sanatorium Association on October 1, 1911 was found by an Audit Company and reported to the Chamberlin trustees as showing an excess of liabilities over cash and good bills receivable amounting to $596.53.   But the report also showed that there was in the hands of the trustees $1786.12 of income from said fund which had accrued prior to October 1, 1911, and had not been paid over.   Upon this state of facts, the trustees on November 1, 1911, unanimously passed a resolution declaring that ''on the first day of October, 1911, no indebtedness against the Maine State Sanatorium Association existed as outstanding which it had not sufficient cash in hand or bills receivable from solvent persons or corporations to fully off-set.''   This resolution was both warranted in fact and conclusive in law.   Had the trustees paid over to the treasurer of the Association on September 30, the accrued income in their hands belonging to the Association, there would have been an actual surplus of $1189.59, instead of a book deficit of $596.53.   The fact that this income was not paid on or prior to that date did not cast on the Association the burden of raising the $596.53 from other sources, before it could have any portion of the $1786.12.   The trustees properly found that this income in reality formed a part of the quick assets of the Association and should be treated as such. To hold otherwise would be to attempt to manufacture a forfeiture out of a situation farthest from the intention of the donor, whose wishes they were attempting to effectuate.   The decision of the trustees of November 1, 1911, must stand.

The second forfeiture claimed, not by Mr. Chamberlin, nor by the trustees of the fund at the time or now, but by the executor and trustees of the estate in the present proceedings, was in October, 1913. At a meeting of the trustees held on October 21, 1913, they examined and accepted the report of an Audit Company showing a deficit of $4,144.23 existing on October 1, and they therefore gave written

notice to the Association that unless said indebtedness was paid and cancelled and satisfactory evidence thereof submitted to the trustees within three months from said October 21, 1913, said trust fund would be paid over to the parties named in the tenth article of the declaration of trust. After the receipt of this notice the trustees of the Association raised the required amount by private subscription and paid it over to the treasurer of the Association, and the treasurer under date of January 17, 1914, notified the trustees of its receipt and the full payment of the indebtedness due on October 1, 1913. The plaintiff trustees were unanimously satisfied under these circumstances that the debts had been paid, that no forfeiture had been incurred, and therefore none was claimed by them.

This action of the trustees is attacked first on the ground that the actual indebtedness was $5539.45 instead of $4144.23, and that because the difference, $1395.22 was paid on October 22, 1913, by the endowment trustees from accrued income in their hands on October 1, such payment was in violation of the declaration of trust, and therefore the indebtedness of October 1, 1913, was never paid according to the requirements of the declaration of trust, and by its terms the fund reverted to the donor.

This is the same point that was raised against the discharge of the indebtedness of October 1, 1911, namely, the payment by the trustees of income accrued and in their hands on October 1, but not paid over until later, and the same rule applies here as there. The payment was fully justified, the finding of the trustees warranted in fact and conclusive in law.

In the second place it is claimed that the indebtedness should have been discharged within three months from October 1, the test date, instead of three months from October 21, the date of notice, and therefore that the payment on January 17, 1914, was seventeen days too late, and a forfeiture resulted ipso facto. We think the plain purport of the agreement is that the payment must be within three months of the date of the notice. Article ten provides that "said trustees shall give notice in writing to said Sanatorium Association of said opinion and in case that within three months thereafter said indebtedness is not paid" &c. The word "thereafter" obviously refers to the time of notice. This is the reasonable as well as the literal construction. The Sanatorium was to be given three months in which to meet the deficit. In the ordinary course of business the

audit could not be completed until some time after October first, and to arbitrarily fix October 1 as the date of the beginning of the time of redemption without regard to the notice would shorten the period and thwart the intention of the donor. The construction put upon the instrument by the trustees was correct, and this without regard to their plenary and conclusive power already considered. The trustees themselves, knowing all the facts, did not declare a forfeiture, and their action was apparently acquiesced in by Mr. Chamberlin, who was then living, was doubtless aware of the situation in a general way, and who signified no disapproval so far as the evidence discloses. He would probably have been surprised at the suggestion that after October 1, 1911, and especially after January 1, 1914, up to the time of his death, August 7, 1914, this fund belonged to him because of these alleged forfeitures. Again, the judgment and finding of the trustees in regard to the discharge of the indebtedness existing on October 1, 1913, must stand.

The third forfeiture is alleged to have taken place in 1915, and this is claimed by Theodore Chamberlin and Walter S. Fox to whom the limitation over ran in case of forfeiture after the death of Eleazer D. Chamberlin. On October 5, 1915, the trustees having received the report of the Audit Company that the net indebtedness on October 1, 1915, was $2,612.53, gave the required written notice of the fact to the president and trustees of the Association as before. On the same date and at the same meeting the attention of the endowment trustees was called to the fact that the Association in consideration of $15,000 had sold and conveyed all its property and assets to the State of Maine by deed and bill of sale dated and delivered on that day in accordance with an agreement dated September 11, 1915, the State assuming the payment of all outstanding indebtedness. Under date of December 15, 1915, the president and treasurer of the Association sent to the endowment trustees a statement to the effect that all said indebtedness had been paid and cancelled. Upon the strength of this statement the endowment trustees again found that their request had been complied with and satisfied themselves that the indebtedness of October 1, 1915, had been paid and cancelled. They therefore declared no forfeiture in this instance, and again their decision must stand.

Forfeitures are not favorites of the law; still less are they favorites of equity, and a declaration by this court of forfeiture of this two

hundred thousand dollar trust fund either in 1911, 1913 or 1915, for any of the trivial reasons alleged, in view of all the facts in the case and the plenary power lodged in the trustees, could not be justified. The trustees evidently performed their duties with a deep sense of their responsibility, and with the utmost good faith. Their attitude is well-voiced by Mr. Franklin C. Payson when he says: "We didn't have in mind any subsequent legal proceedings and we tried to conduct the trust in a way that would meet the obligations of the trustees and the wishes of the donor. We were not trying to 'pick up pins'." This last phrase obviously refers to the incisive language of Chief Justice Peters in *Woodbury* v. *Marine Society*, 90 Maine, at page 23, when he closed the opinion with the original maxim, "Equity does not stoop to pick up pins." To the query then, did a forfeiture take place as provided in the trust agreement, our answer is in the negative.

III. Was there a failure of the trust caused by a transfer of all the property of the Association to the State of Maine on October 5, 1915, and the consequent cessation of business on the part of the Association?

This question must be answered in the affirmative. The object of the donor's bounty was limited to this particular donee, the Maine State Sanatorium Association, a private corporation which had established and maintained the Hebron institution. He had faith in private rather than public management, as the evidence shows, and he created this trust fund "solely" for the benefit of this Association. There was an implied condition that the Association should continue in operation and carry on its own work in its own way. After Mr. Chamberlin's death the Association disposed of all its property, ceased to have any control over the institution or its policy, ceased to exercise any of the functions of a corporation, and virtually became extinct, although it did not go through the technical procedure of dissolution. Such dissolution would have been appropriate, *Van Oss* v. *Petroleum Co.*, 113 Maine, 180, but it would not have changed the situation. It would have been but legal interment. Already the spirit had departed from the body, and the living, active corporation for whose sole benefit Mr. Chamberlin had made this gift had in fact ceased to exist. *Stone* v. *Framingham*, 109 Mass., 303. The State of Maine since that time, as the owner of the property, has maintained and managed the institution along with other State institutions of the same character, carrying out its own policies through a board of

trustees appointed by the Governor in accordance with the provisions of R. S., Chap. 146. The reason for such transfer was undoubtedly a valid one in the judgment of a majority of the Sanatorium trustees, namely, the apparent impossibility of continuing the institution without substantial appropriations from the State. The State had changed its policy of assistance in 1915, and instead of continuing to aid private institutions of this character had created a State Board of Trustees for Tuberculosis Sanatoriums, in order that such institutions might come within the ownership and control of the State, and therefore the Legislature had appropriated only six thousand dollars for Hebron Sanatorium for 1915, and had made no appropriation for 1916.

The legal consequence of this wholesale transfer of property and withdrawal from management is clear. As the trust was limited to that particular corporation and that corporation was not intended as a mere conduit for the application of the fund to charitable purposes, the failure of the cestui que trust worked a failure of the trust itself. Under such circumstances in this class of gifts, if the donee fails, the gift itself fails. *Esterbrooks* v. *Tillinghast*, 5 Gray, 17; *Stratton* v. *Physio-Medical College*, 149 Mass., 505, 508; *Coe* v. *Washington Mills*, 149 Mass., 543, 548; 1 Perry on Trusts, Section 160. This is analogous in principle to the rule that when a trust is so indefinite or uncertain, *Murdock* v. *Bridges*, 91 Maine, 124; *Haskell* v. *Staples*, 116 Maine, 103, or so impracticable, *Gilman* v. *Burnett*, 116 Maine, 382, that it cannot be executed, or the trust fails because of the death of the beneficiary, *Dodge* v. *Dodge*, 112 Maine, 295, then the trust terminates.

IV. In whom is the title to this Fund?

The remaining question is, in whom is the title to this fund now that the trust has failed?

1. Theodore Chamberlin and Walter S. Fox in their individual capacities assert a claim based upon article ten in the declaration of trust. This provides, as we have already seen, that if the Association was in debt on October first on any alternate year and after notice thereof in writing from the trustees of the fund did not within three months thereafter free itself therefrom and submit to the trustees in writing satisfactory evidence of the payment and cancellation of the debt, then the fund and its accumulations should be paid over to Eleazer D. Chamberlin, if living, and if not living, then to Theodore

Chamberlin and Walter S. Fox in equal shares or to their then heirs at law, etc. It is by virtue of this limitation over that Messrs. Chamberlin and Fox maintain their claim.

The question of whether this limitation over is or is not void as offending the rule against perpetuities, has been argued elaborately and with great learning on the part of counsel, but we are unable to see how that question is involved in the present discussion.

The contingent interest in Chamberlin and Fox, under the terms of the declaration of trust, could take effect only on the happening of one event, the failure on the part of the Association to discharge its indebtedness after due notice from the trustees. That is the expressed condition and the only condition under which the contingent interest could materialize. But, as we have already seen, that event did not happen. All indebtedness was met and discharged to the satisfaction of the trustees. They were the parties clothed with the power to declare a forfeiture for the specified cause, and this they have never done because the cause did not arise. The court cannot do what the trustees under the provisions of the trust agreement could not do. We can enforce the terms of the trust but we have no power to manufacture new terms to be inserted in the trust. We cannot order payment of this fund to Messrs. Chamberlin and Fox if the trustees could not have done so. If the agreement had stated that if for the reason specified, or for any other reason or cause whatever, the trust should terminate, and the fund should be paid over to the holders of the contingent interests, then the trustees could have so disposed of it and the court could in this proceeding instruct them to that effect provided the limitation over was valid. But the agreement does not so state. It provides for the payment on a single contingency and that contingency has not happened. It is impossible for us to work out of or into this agreement any intention on the part of Eleazer D. Chamberlin as to the course the fund should take in case the Sanatorium Association ceased to do business and therefore the trust failed. Probably Mr. Chamberlin had no intention whatever in regard to that situation because he did not anticipate that such an event might happen. He provided for one event and one only, and to that all parties are limited. Our sympathy might make it easy for us to send the fund in case of a failure of trust for an independent and unexpressed cause, to the same parties who might have taken it were the limita-

tion valid, in case of a forfeiture of the trust on the single condition expressed, but we know of no rule of legal or equitable construction which will permit us to so decree.

Apart therefore entirely from the question of the validity of the limitation over, upon which we express no opinion, because such opinion would be merely in the nature of dictum, we hold that Messrs. Chamberlin and Fox are not entitled to this fund, as the only possible contingency which might vest title in them has not and never can arise.

2. The State of Maine bases its claim upon two distinct grounds: First because of the assignment to it by the Sanatorium Association under date of October 5, 1915, of all its right, title and interest in and to this endowment fund; and second by virtue of the cy pres doctrine. Neither contention can be sustained.

The Sanatorium as the beneficiary had no assignable interest in this fund. It was given no such power by the trust agreement. It was the recipient of the bounty under certain conditions, but it could not transfer that bounty to another. The attempt was futile. *Harvard College* v. *Society, &c.,* 3 Gray, 280; *Cary Library* v. *Bliss,* 151 Mass., 364; *Harvard College* v. *Attorney General,* 228 Mass., 396.

Nor can the doctrine of cy pres be successfully invoked. That doctrine has been so recently and so fully considered by this court that an extended discussion here is unnecessary. *Doyle* v. *Whalen,* 87 Maine, 426; *Brooks* v. *Belfast,* 90 Maine, 318; *Hospital Ass'n.* v. *McKenzie,* 104 Maine, 320; *Allen* v. *Nasson Inst.,* 107 Maine, 120; *Lynch* v. *So. Cong. Church,* 109 Maine, 32; *Gilman* v. *Burnett,* 116 Maine, 382. The general principle running through all the cases is that in order to apply the cy pres doctrine, there must be two prerequisites, first, a failure of the specific gift, and second, a general charitable intent disclosed in the instrument creating the trust. The first element exists here. There has been a failure of the specific gift for want of a donee. The second element cannot be discovered either in the trust instrument itself or in the circumstantial facts in the light of which that instrument is to be interpreted.

So far as the instrument is concerned such general charitable purpose is carefully excluded. The gift is to this particular institution, the net income to be paid over to its treasurer for the time being, nor can it even be used for all the purposes to which the Sanatorium might devote it, but it is limited solely to the annual running expenses

of the said Sanatorium Association, and it cannot be used for the purchase of real estate, furnishings, interest "or for any other purpose whatever except that above stated." The fund is to bear the name of the donor, as a part of the assets of this institution. In case of forfeiture for non-payment of debts, the fund was to go to individuals named. Every paragraph of the declaration is consistent with the intent of a particular charitable gift and inconsistent with any general purpose to make this benefaction to the general cause of antituberculosis.

The circumstances emphasize this view. Mr. Chamberlin had become interested in this Hebron institution as early as 1905, when he visited it and observed its work. He made a gift of $15,000 to it at about that time for general purposes, and another gift of $10,000, and later of $40,000 for an administration building. Then he seems to have lost interest in it for a time as it became heavily involved in debt. This debt in the early part of 1910 amounted to $60,000, and Mr. Chamberlin, perhaps through the influence of friends of the institution, renewed his interest, and offered to pay $15,000 or one-quarter of the outstanding indebtedness if the friends of the institution would raise the balance of $45,000, and then when the debts were paid, he offered to place this fund of $200,000 in trust as an endowment. These steps were all taken, the debt was paid, and the endowment perfected. He asked that his nephew be made a member of the Board of Hebron trustees and that was done.

It is difficult to conceive of a situation where the personal element in the gift stands out in a stronger light than it does here, and it is impossible to escape the conclusion that the cy pres doctrine has no application. To attempt to apply it would be to defeat rather than to further the donor's design. This case falls in line with *Brooks* v. *Belfast*, and *Gilman* v. *Burnett*, supra. The claim of the State of Maine cannot be sustained.

3. The claim of the Executor.

It follows from what has been said that this fund now belongs to the estate of the donor as a resulting trust. *Brooks* v. *Belfast*, 90 Maine, 318-332; *Fitzsimmons* v. *Harmon*, 108 Maine, 456; *Haskell* v. *Staples*, 116 Maine, 103; *Gilman* v. *Burnett*, 116 Maine, 382, 388; *Hopkins* v. *Grimshaw*, 165 U. S., at 356. The specific trust having failed, a trust results by implication of law to the executor under the will. His claim is therefore sustained.

Under the circumstances of this case it is proper, and it is hereby ordered, that costs and reasonable counsel fees be fixed by the sitting Justice who shall make the final decree, be paid by the executor, and charged by him in his account of administration.

*Decree in accordance*
*with opinion.*