FIRST UNIVERSALIST SOCIETY OF BATH
*vs.*
LEWIS B. SWETT, ET AL.

Sagadahoc. Opinion July 21, 1952.

*Robinson & Richardson,* for Plaintiff.

*John E. Wilson,*
*Ralph A. Gallagher,* for Defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MERRILL, J.   On appeal. This is an appeal from a final decree of a Justice of the Superior Court in Equity upon a bill brought to obtain instructions from the Court as to the disposition of the principal sum and the accumulated unexpended income bequeathed to the plaintiff by the following clause in the will of James S. Lowell, former Judge of Probate of Sagadahoc County:

> "Tenth.   I give and bequeath to the Universalist Church of said Bath the sum of $5000; the principal to be held intact, the income only to be used for the support of said church."

There was no residuary clause in the will of the testator. However, the will contained the following clause:

"Sixteenth. As to my residuary estate, including lapsed or ineffective legacies, I propose to dispose of the same by codicil hereafter."

No such codicil has ever been found or filed.

After the death of Judge Lowell, the exact date of which is not shown by the record, the principal of $5,000.00 was paid over to the plaintiff and it was deposited in the First National Bank of Bath, Maine, on September 20, 1932. The First Universalist Society of Bath which was the "Universalist Church of said Bath" has long since ceased to function. The exact date of such cesser does not appear in the record, but the income on the $5,000.00 fund has accumulated without withdrawal since December 1, 1942. Although the corporate organization of the plaintiff has not been formally dissolved, it has divested itself of all of its property except the fund in question by conveyance to "The Universalist Church of Maine," the State-wide corporate organization of the Universalist Church, to which it owed allegiance. For sometime prior to the filing of the bill the plaintiff had ceased to function as a church or religious society, and the testimony shows that there is no probability of its ever being reactivated as such. In passing, it might be noted that after the church edifice was conveyed to the "Universalist Church of Maine" by the plaintiff, it was reconveyed to the plaintiff, which then conveyed it and the lot on which it stands to the local lodge of Odd Fellows.

In addition to seeking a construction of the will and direction as to the disposal of said fund, the plaintiff sought leave to turn over the same, together with the accumulated unexpended income, to the Universalist Church of Maine to be devoted to Universalist purposes in accordance with the charter of the Universalist Church of Maine.

As drawn, the bill made the Universalist Church of Maine, the First National Bank of Bath, in which the funds are deposited, and Ralph W. Farris, Attorney-General of Maine, parties defendant. The other parties defendant were Lewis B. Swett and Lois Swett Earl, sole heirs and next of kin of Horace W. Swett, who was the sole heir and next of kin of the testator, and Ralph A. Gallagher, who is administrator of the goods and estate of said Horace W. Swett, deceased. By amendment, Alexander A. LaFleur, Attorney-General of Maine, successor in office to said Farris, has been admitted as a party in his place.

The latter three defendants appeared and jointly claimed that the special bequest of $5,000.00, originally bequeathed to the Universalist Church of Bath, together with its income since said church ceased to function, should be turned over as a lapsed legacy to the defendant Gallagher, in his capacity as administrator of the estate of Horace W. Swett, to be distributed by him to the defendants, Lewis B. Swett and Lois Swett Earl as the sole surviving heirs and next of kin of said Horace W. Swett, sole surviving heir of James S. Lowell, the testator, the executor of the will having long since deceased.

The Universalist Church of Maine appeared and claimed the fund and accumulated unexpended income, alleging that the Court could and should direct payment thereof to it under the doctrine of *cy pres*. From a decree directing the bank to pay over the fund in question to the Universalist Church of Maine to hold and use the same for general charitable and religious purposes of Universalism, this appeal was taken.

The fact that the plaintiff corporation has not been legally dissolved is of no controlling import. As we said in *Bancroft* v. *Sanatorium Association*, 119 Me. 56, 67:

"Such a dissolution would have been appropriate, *Van Oss* v. *Petroleum Co.*, 113 Me. 180, but it

would not have changed the situation. It would have been but legal interment. Already the spirit had departed from the body, and the living, active corporation for whose sole benefit Mr. Chamberlin (here Judge Lowell) had made this gift had in fact ceased to exist. *Stone* v. *Framingham,* 109 Mass. 303."

This same principle was recognized by this Court in *Snow, et al.* v. *Bowdoin College,* 133 Me. 195, 201 where we said:

"In the case which we are considering it is not altogether clear from the record whether the Medical School of Maine has ceased to exist as a corporate entity or has merely ceased to function. In either event the aid of equity is properly sought to determine the proper disposition of this fund and its income. If it has become impossible to carry out the exact purpose of the donor, it is entirely immaterial whether such failure has been caused by the demise of the corporation designated by her as the vehicle to execute her desire or by its total incapacity to do what was expected of it."

Nor do we deem it of importance in this case that the bequest was given directly to the local church, and not to a trustee. The will stated that the principal was "to be held intact, the income only to be used for the support of said church." As we said in *Edwards* v. *Packard,* 129 Me. 74, 79:

"It is unimportant that the word 'trust' does not appear. Technical language is unnecessary. Nor is it necessary that the testatrix should have had in her mind the idea of a trust *eo nomine.* It is sufficient if she intended that her will should follow her property after her death and control or limit its use. *Clifford* v. *Stewart,* 95 Me. 47. An expressed equitable obligation rests upon Miss Howard by reason of the confidence imposed in her by Mrs. Foudray to apply and deal with the property in question for the benefit of herself and others according to the terms of the will expressing this

confidence. This constitutes a Trust as defined in 8 Words and Phrases (First Series), 7119 et seq; 27 Am. & Eng. Encyc. 1st Ed., 3; 1 Perry on Trusts, 2; *McCreary* v. *Gewinner,* 103 Ga. 528.

It is not defeated by precatory words."

In this case, within the meaning of *Edwards* v. *Packard,* the local church held this bequest of $5,000.00 in trust, the principal to remain intact and the income only to be used for the support of said church.

The specific purpose to which the testator directed that the income of this fund be devoted has failed. The question is whether or not upon the failure of this purpose a trust results by implication of law in favor of the estate of the testator, or whether this Court acting under its equitable powers will apply the principal and accumulated unexpended income *cy pres* to some other charitable purpose.

The doctrine of *cy pres* and the extent of the Court's powers thereunder has been fully and learnedly discussed in the nine prior opinions of this Court hereinafter mentioned, many of which have been cited as leading cases in other jurisdictions and texts. See also note in 74 A.L.R. 671.

We said in *Lynch* v. *Congregational Parish,* 109 Me. 32 at Page 38:

"*Cy pres* is a judicial rule of construction applied to a will by which, when the testator evinces a general charitable intention to be carried into effect in a particular mode which cannot be followed, the words shall be so construed as to give effect to the general intention. It is applied only to valid charitable gifts."

The criteria for its application have been well stated by us in *Bancroft* v. *Maine State Sanatorium Association,* 119 Me. 56, 70 as follows:

148

> "The general principle running through all the cases is that in order to apply the cy pres doctrine, there must be two prerequisites, first, a failure of the specific gift, and second, a general charitable intent disclosed in the instrument creating the trust."

In the case at bar there is no question as to whether or not the specific gift has failed, even as it had failed in each of the Maine cases hereinafter considered. The presiding Justice has found such failure and his finding is unquestioned. The question in the case at bar is whether the will here under consideration sufficiently expresses a general charitable intent so that upon the failure of the specific charitable purpose, a substitution of charitable legatees will be permitted under the *cy pres* doctrine. Of the nine Maine cases where the application of the *cy pres* doctrine was in issue, in only three did we find that the will sufficiently expressed a general charitable intent to enable the Court to apply the doctrine and permit a substitution of legatees. These cases were, *Snow, et al.* v. *Bowdoin College,* 133 Me. 195, *Lynch* v. *South Congregational Parish,* 109 Me. 32 and *Stevens* v. *Smith,* 134 Me. 175. In the other six cases we refused to so apply it. *Bancroft* v. *Maine State Sanatorium Assn.,* 119 Me. 56, *Gilman* v. *Burnett,* 116 Me. 382, *Allen* v. *Nasson Institute,* 107 Me. 120, *Brooks* v. *Belfast,* 90 Me. 318, *Doyle* v. *Whalen,* 87 Me. 414 and *Merrill* v. *Hayden,* 86 Me. 133.

The following cases neither apply nor refuse to apply the doctrine. *Hospital Association* v. *McKenzie,* 104 Me. 320 (question of which of two hospitals qualified under language of bequest), and *Manufacturers Nat'l. Bank* v. *Woodward,* 141 Me. 28 (question of modifying the method prescribed by the testator in carrying out the specific object).

Although the Court cannot apply a fund held in trust, or subject to a trust, *cy pres* unless it be held for a charitable

*purpose,* it by no means follows that all funds held for a charitable purpose may be applied *cy pres* upon the failure of the particular purpose for which they are held. It is only when the testator evinces a general charitable intention to be carried into effect in a particular mode which cannot be followed, that the words may be construed so as to give effect to the general intention. *Stevens* v. *Smith,* 134 Me. 175, 178, *Lynch* v. *Congregational Parish,* 109 Me. 32, 38. Absent such general charitable intention, even though the specific purpose be a charitable one, when it fails, unless there be a *valid* alternate disposition thereof in the will, there is a resulting trust to the executor for distribution to the next of kin as intestate property.

Whether or not the testator evinced a general charitable intent or, as otherwise said, evinced an intent to devote the subject matter of the gift to charitable purposes generally, is a question of interpreting the will of the testator. Being a question of interpretation of a will the intent must be discovered within the four corners of the instrument being construed, read in the light of the surrounding applicable circumstances, or as said in *Lynch* v. *Congregational Parish, supra,* "in the light of existing conditions." See also *Bancroft* v. *Sanatorium Assn.* 119 Me. 56, 70, where the Court held with respect to the general charitable intention that it could "not be discovered either in the trust instrument itself or in the circumstantial facts in the light of which that instrument is to be interpreted."

In the present case the testator did not make an unrestricted gift of $5,000.00 to the local church to use as it saw fit. He restricted the church from using any of the principal sum, and directed that the income only should be used for the support of said church. It appears from the record that the testator and his family were attendants at the local church and that during his lifetime he had contributed toward its support. It does not appear that he was a member

of the church, in fact, his name does not appear in the offcial list of members contained in the records of the church, nor do the records of the church show any connection upon his part with the church or that he ever held office therein. It does appear in evidence that the church was having a hard time to get along and that Judge Lowell hoped that it could and would continue to function. There is nothing in the record to show that the testator knew of the official connection between the local Universalist Church, to which he made his bequest, and the parent State body, which is the claimant of the funds, or that he even knew of the existence of the parent body. His other bequests for charitable uses were to strictly local charities.

Upon these facts we cannot find that the testator evinced any general charitable intention in making this gift to the local Bath church. It was a *specific* gift to a *specific* church for a *specific* purpose. Failing the beneficiary and failing the purpose, in the absence of disposition thereof by Judge Lowell's will, the fund will be distributed as intestate property belonging to his estate by virtue of a resulting trust.

To find a general charitable intent in this case would require us to hold that a mere bequest of money in trust, the income only to be applied to the support of the local church which the testator had attended, evinced a general charitable intent, and that upon the failure of that local church to function the Court could apply the gift *cy pres* to other charitable purposes.

The question of whether or not a testator in making a charitable bequest has evinced a general charitable intent or is making a specific bequest to a specific beneficiary for a specific charitable purpose is a question of interpretation of the particular will under consideration. To attempt to formulate a general rule which would solve all such cases would be an attempt to achieve the impossible. Nor do the

cases from our own or other jurisdictions materially aid in deciding the particular question of interpretation with which we are here concerned, as distinguished from a decision of the fundamental principles of law from which the authority of the Court to apply the *cy pres* doctrine arises. However, the case of *Shannep* v. *Strong,* 160 Kan. 206, 160 Pac. 2nd, 683, is almost on all fours with the present case. In that case the Kansas court found that the dominant purpose and intent of the testator was to aid "two particular churches in his old hometown rather than to create a general charity for religious purposes" and refused to order the property left for the benefit of one of the churches to be applied to the purposes of its parent organization upon the extinction of the particular church.

We find that the intent of the testator in this case was to aid in the support of the particular Universalist Church to which the bequest here in question was made for that express purpose. We are unable to find either in the instrument itself or in the circumstantial facts in the light of which that instrument is to be interpreted the general charitable intent which would authorize us to apply the doctrine of *cy pres*.

As we said in *Brooks* v. *Belfast, supra*:

> "It is not the duty of the court to be 'curious and subtle' in devising schemes to aid testators in disinheriting their next of kin under circumstances like these."

The purpose for which the bequest in question was made having failed because the specific church, for whose support the income of the fund was to be expended, has ceased to exist or function as a church, the gift fails both as to the principal and its accumulated unexpended income. There being no disposition thereof by the will the funds in question should be distributed according to the laws of descent

as intestate property of the testator under a resulting trust in favor of his estate.

In *Bancroft* v. *Sanatorium Association*, 119 Me. 56 at 71, after having held that the gift had failed, we said:

> "It follows from what has been said that this fund now belongs to the estate of the donor as a resulting trust. *Brooks* v. *Belfast*, 90 Maine 318-332; *Fitzsimmons* v. *Harmon*, 108 Maine 456; *Haskell* v. *Staples*, 116 Maine 103; *Gilman* v. *Burnett*, 116 Maine 382, 388; *Hopkins* v. *Grimshaw*, 165 U. S., at 356. The specific trust having failed a trust results by implication of law to the executor under the will."

In the instant case, however, the executor of the will of Judge Lowell has died, and, by implication, it appears that no administrator d.b.n.c.t.a. has been appointed. The funds in question form a part of the estate of Judge Lowell. Being personal property, they do not descend directly to the next of kin, as real estate descends to the heirs, but pass to the personal representative and must be administered and distributed by him under the direction of the Probate Court as intestate property belonging to the estate. The principal sum of $5,000.00, together with the accumulated unexpended income, should be paid to the administrator of Judge Lowell's estate and, if there be none at present, to the one who shall hereafter be appointed and qualifies as such.

> *Appeal sustained with costs.*
> *Bill sustained with costs.*
> *Case remanded to sitting Justice for a decree in accordance with this opinion. Costs and reasonable counsel fees to be fixed by the sitting Justice, paid by the administrator of the estate of James S. Lowell, d.b.n.c.t.a., and charged in his probate account.*