· Robert Chambers *v.* Charles A. Smith, Appellant. ·

*Oil and gas lease—Mines and mining.*

In an action to recover a bonus under an oil and gas lease it appeared that prior to the execution of the lease the lessor had conveyed the coal under his land to a corporation, reserving to himself in the deed the right to drill three wells for oil and gas through the coal. After the execution of this deed, but before the execution of the lease, the lessor conveyed portions of the surface of his land to various other persons, without reserving to himself any right to drill wells upon the portions of the land so conveyed. The defendant, lessee, filed an affidavit of defense in which he averred that the corporation had denied the right of the lessor and his lessees to drill wells for oil and gas, and that under threat of suit defendant had agreed to pay the corporation a certain amount for each well, and that subsequently the corporation had obtained an injunction restraining the drilling of any wells upon the lots conveyed to others. *Held*, that the affidavit of defense was insufficient to prevent judgment.

Argued Oct. 18, 1897. Appeal, No. 36, Oct. T., 1897, by defendant, from order of C. P. Washington Co., Aug. T., 1896, No. 28, making absolute a rule for judgment for want of a sufficient affidavit of defense. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule for judgment for want of a sufficient affidavit of defense. Plaintiff's statement was as follows:

On November 7, 1895, the plaintiff executed and delivered to O. P. Irvine and John Chambers, of Allegheny county, Pennsylvania, a lease for oil and gas purposes, of a certain tract of land in said lease described. A copy of said lease is hereto attached and made part hereof. Said lease, among others, con-

tained the following covenant, to wit: "It is further agreed that should the first well produce fifty barrels of oil for thirty consecutive days the parties of the second part to pay a bonus of three hundred dollars, and should the said first well produce one hundred barrels of oil for thirty consecutive days then a bonus of one thousand dollars shall be paid to the party of the first part."

Subsequent to the date of said lease, and before any drilling operations were begun upon said tract of land, the rights of the aforesaid lessees became vested by purchase and assignment, in the defendant and, in pursuance thereof and under the terms of said lease, he entered upon said tract of land and drilled a number of wells thereon. The first well drilled was completed on or about the 2d day of February, 1896, and from that date for thirty consecutive days produced in excess of one hundred barrels of oil per day, by reason whereof the defendant, under the foregoing covenant of said lease, became indebted to the plaintiff in the sum of $1,000, and this suit is brought to recover said sum with interest thereon from the 4th day of March, 1896.

The lease was as follows :

" This agreement, made and entered into this seventh day of November, A. D. 1895, by and between Robert Chambers of Cecil township of the county of Washington and state of Pennsylvania of the first part, and O. P. Irvine, and John Chambers, of Allegheny county and state of Pennsylvania of the second part, witnesseth, that the said party of the first part, for the consideration of the covenants and agreements herein after mentioned, has granted, demised and let unto the parties of the second part, their heirs or assigns, for the purpose and with the exclusive right of drilling and operating for petroleum and gas, all that certain tract of land [description], containing fifty acres, be the same more or less, reserving —— acres around the buildings upon which no well shall be drilled, without the written consent of both parties. The parties of the second part their heirs or assigns, to have and to hold the above described premises for and during the term of one year from the date hereof, and as much longer as it is profitable to operate or pay rent on the same. The said parties of the second part, in consideration of the said grant and demise agree to give to the party of the first part, the full equal one-eighth part of all the petroleum

obtained or produced on the premises herein leased, and to deliver the same in tanks or pipe lines to the credit of the party of the first part. It is further agreed that if gas is found in paying quantities the consideration in full to the party of the first part, instead of the one-eighth royalty, shall be two hundred dollars per annum for the gas from each well when marketed, and gas free of cost for one residence on the premises.

"Operations on the above described premises shall be commenced within thirty days, and one well completed within ninety days from the date hereof, and a failure to complete one well within ninety days from date (unavoidable delays or accidents excepted) renders this lease null and void and to remain without effect between the parties hereto. It is further agreed that should the first well produce fifty barrels of oil for thirty consecutive days the parties of the second part to pay a bonus of $300, and should the said first well produce one hundred barrels of oil for thirty consecutive days then a bonus of $1,000 shall be paid to the party of the first part, and if the first well is a paying well a second well shall be commenced within sixty days from the completion of the first well, and a third well within sixty days from the completion of the said second well."

The affidavit of defense was as follows:

On September 22, 1890, Robert Chambers, the plaintiff, executed and delivered to the Ohio & Pennsylvania Coal Co., a deed for a tract of coal underneath his land situated in Cecil township, Washington county, Pennsylvania. The said land, under which the said coal was situated, included the fifty acres subsequently leased by the said Robert Chambers to O. P. Irvine and John Chambers, as set forth in the plaintiff's statement. The said deed is recorded in the recorder's office of Washington county, in deed book 160, page 130. In and by the said deed, the said Robert Chambers, the grantor, reserved to himself the right to drill three wells for oil and gas through the said coal; said three wells to be so drilled as "not to conflict in any way with the proper mining of said coal."

After the execution and delivery of the above mentioned deed to the Ohio & Pennsylvania Coal Co., the said Robert Chambers sold and conveyed to Jacob E. Ridgeway a portion of the surface overlying the coal which had been conveyed to the Ohio & Pennsylvania Coal Co. The deed from the said Robert

Chambers to Jacob E. Ridgeway is dated July 20, 1891, and recorded in deed book 167, page 112. The amount of land conveyed was 5.32 acres. The said Robert Chambers conveyed the 5.32 acres to Jacob E. Ridgeway without reserving to himself any right to drill for oil and gas upon said land so conveyed. The deed from Robert Chambers to the Ohio & Pennsylvania Coal Co. and the deed to Jacob E. Ridgeway are made part of this affidavit of defense. Subsequent to the said conveyance to Jacob E. Ridgeway, the said Robert Chambers sold and conveyed various other portions of the surface overlying the coal conveyed to the Ohio & Pennsylvania Coal Co. to Baptiste Marle, Mary McKinney, August Bord, F. Pondevigne, Valet Caliste, Emil and Sarah Lipscher, Patrick Fisher, A. Schwab, A. J. Allston, Cornelius O'Rourke, Adolph Hirart, Charles Handal, W. C. Mussellman, John Givandau, John Moureau and Andrew Savage.

All of said conveyances were made without any reservation to the said Robert Chambers of the right to drill for oil and gas, and were all made prior to the time of the execution of the lease from Robert Chambers to O. P. Irvine and John Chambers. It is true that this deponent became the owner by assignment of the lease of O. P. Irvine and John Chambers, and that he drilled a well upon said tract of land, which said well was completed on or about February 2, 1896, and produced in excess of one hundred barrels of oil per day for thirty consecutive days after its completion. Since that first well was completed— wells have been drilled upon the 5.32 acres conveyed to Jacob E. Ridgeway, in neither of which wells has this deponent had any interest, and during the same time a number of wells were drilled upon the lots conveyed by the said Robert Chambers to the parties above named, as herein set forth, and in none of those wells did this deponent have any interest whatever. Subsequent to the completion of the first well by the deponent upon the said tract of land, and while the second well was being drilled, the Ohio & Pennsylvania Coal Co. claiming that the conveyance made by Robert Chambers of the surface overlying the coal conveyed to said company subsequent to the date of the conveyance to the Ohio & Pennsylvania Coal Co., and prior to the time of the execution of the lease above mentioned, under which this deponent was operating, without any reservation of

the right to drill the three wells for oil and gas stipulated for in the deed from Robert Chambers to the Ohio & Pennsylvania Coal Co., had passed his right to drill the said three said wells, denied the right of the said Robert Chambers or his lessees or assigns to drill any wells for oil or gas upon the said tract of land embraced in the lease under which this deponent was operating, and threatened to stop by injunction any further developments by this deponent upon said land for oil or gas. This deponent consulted counsel and was advised that his right to operate upon said tract of land was at least doubtful, and that it was dangerous for him to risk an injunction being granted which might ruin his property. A compromise was accordingly affected with the Ohio & Pennsylvania Coal Co., in and by which the said company granted to this deponent the right to drill any number of wells not exceeding ten, upon said tract of land, by paying the sum of $500 for each well at the time the location was made, and at the same time this deponent paid to the said company $1,000 for wells Nos. 1 and 2 on said farm.

Subsequently the said Ohio & Pennsylvania Coal Co., filed a bill in equity for an injunction to restrain the further drilling of wells upon the lots conveyed by Robert Chambers as herein above set forth which said injunction the court granted.

Deponent further says that while the said conveyances, herein above referred to, were all recorded at the time of the execution of the lease under which the deponent is operating, and were therefore legal notice, yet this deponent had no actual notice of the matters herein set forth until after the completion of one well upon the said land.

This deponent, therefore, says that if as a matter of law upon the facts as above set forth the said Robert Chambers, at the time of the execution of his said lease to O. P. Irvine and John Chambers had no right to drill three wells or to drill any wells upon the said tract of land, and that neither the said O. P. Irvine or John Chambers, nor this deponent, as their assignee, had the right, as against the Ohio & Pennsylvania Coal Co., to operate for oil and gas upon said land, then the covenant in said lease to pay $1,000 bonus on said first well was without consideration, and is void. All of which the deponent avers and believes, and expects to be able to prove.

TAYLOR, J., filed the following opinion:

It was admitted on the argument of this case by the defendant that the first well completed under the lease produced one hundred barrels of oil for thirty consecutive days, in which event, "a bonus of one thousand dollars shall be paid to the party of the first part,"—the plaintiff in this suit brought to recover this $1000 bonus. The affidavit of defense sets out the facts and states the reasons for withholding the payment of this bonus.

Prior to the lease of the plaintiff's land for oil and gas to the defendant's assignor, he had sold the Pittsburg or river vein of coal under said tract of land, the deeds for which were duly recorded, and of record at the time of the lease for oil and gas. In the conveyances of the coal, the owner of all, except the coal, reserved the right to drill three wells for oil and gas. This right he gave to O. P. Irvine and John Chambers under the lease in suit, who sold the same to the defendant Smith.

After the first well was completed some time, and a second drilled below the coal, the owners of the coal denied the said defendant's right in law to drill through their vein of coal and litigation followed between the owners of the coal, and oil right, which resulted in a compromise, to which litigation and compromise the plaintiff in this suit was not a party, or in any particular consulted or concerned. The contention of the defendant is that the lease for oil and gas containing words of grant, there is an implied covenant for quiet enjoyment under sec. 6 of the Act of May 28, 1715, 1 Sm. L. 95, against the grantor, his heirs and assigns. This act refers to any estate of inheritance in fee simple, while the lease in this case is the mere right to operate, to drill—the estate being in the oil when brought to the surface and only passing when oil is found and brought to the surface: Venture Oil Co v. Fretts, 152 Pa. 451; McNish v. Stone, 152 Pa. 457.

But assuming the act of May 28, 1715, applies to the lease in this case, has the lessor, his heirs and assigns done any act prejudicial to his assigns—defeating or encumbering in any way the right or estate granted?

Whenever the enjoyment of a right, or an estate, or interest ceases by lawful title, where there is a covenant for quiet enjoyment or against encumbrances then, and then only, is the

covenant broken in such a manner that an action, assigning a breach thereof, will lie: Duff v. Wilson, 69 Pa. 316.

There are other questions raised by the affidavit of defense, and upon the argument of the case, but we do not think they are sufficient to prevent judgment for the plaintiff. All the conditions and provisions of the lease relating to the drilling of the first well have been fulfilled by both parties thereto, except the payment by the defendant to the plaintiff of the bonus of $1,000 for the first well, admitted to have produced one hundred barrels of oil per day for thirty consecutive days, when it became due and payable.

Now, Nov. 23, 1896, this cause came on to be heard, and was argued by counsel, and after due consideration thereof it is ordered that judgment be entered for the plaintiff, Robert Chambers, against the defendant, Charles A. Smith, for want of a sufficient affidavit of defense, and the prothonotary is directed to liquidate the sum due from the statement filed in said case.

*Error assigned* was the order of the court.

*R. W. Irwin*, with him *J. W. & A. Donnan*, for appellant, cited, Ross v. Dysart, 33 Pa. 452; Rawle on Covenants for Title, 476; Mitchell on Real Estate and Conveyancing, 408.

*W. S. Parker*, with him *Winfield McIlvaine*, for appellee, cited, Coal Co. v. Mellon, 152 Pa. 286; Moore v. Weber, 71 Pa. 432; Memmert v. McKeen, 112 Pa. 321; Barns v. Wilson, 116 Pa. 306.

PER CURIAM, October 25, 1897:

The only question presented by the assignments of error is: Whether the court erred in entering judgment against the defendant for want of a sufficient affidavit of defense?

We find nothing in the record that would have warranted the court in sending the case to a jury. On the contrary, its action in sustaining the motion for judgment is amply vindicated in the opinion sent up with the record; and on that opinion, the judgment is affirmed.