STATE EX REL. RADISSON HOTEL AND ANOTHER v.

DISTRICT COURT OF HENNEPIN COUNTY.[1]

June 20, 1919.

No. 21,384.

**Workmen's Compensation Act — accident in course of employment — evidence.**
1. The evidence sustains the finding that an employee of one of relators met death in the course of her employment from an accident arising out of it.

**Same — dependents.**
2. Children under 16 years are conclusively presumed dependents.

**Same — who held to be orphans.**
3. Where the employee accidentally killed is the mother of several children under 16 years of age, and the father had for several years prior to her death deserted the family, such children are to be regarded as orphans, coming within subdivision 10, section 14 of chapter 209, Laws 1915, for the purpose of fixing the amount to be paid under the Workmen's Compensation Act.

Upon the relation of Radisson Hotel Company and another the supreme court granted its writ of certiorari directed to the district court for Hennepin county and the Honorable Horace D. Dickinson, one of the judges thereof, to review the proceedings in that court under the Workmen's Compensation Act brought by F. J. Hirt, guardian of the minor dependents of Vera Meakins, employee, against relators as employer and insurer. Affirmed.

*A. G. Briggs* and *Charles H. Weyl,* for relators.
*Sasse & French,* for respondents.

HOLT, J.

Certiorari to review a judgment in a proceeding under the Workmen's Compensation Act.

Vera Meakins was accidentally killed in Hotel Radisson, Minneapolis,

[1]Reported in 172 N. W. 897.

shortly after eight o'clock in the evening of November 3, 1918. She left surviving a husband and three minor children, the oldest being seven years of age. For several months prior to her death, she had been in the employ of the Hotel Radisson Company in charge of the passenger and freight elevators and the operators of the hotel. The court found that death resulted from an accident arising out of and in the course of her employment and that the three minor children were her dependents, and as conclusion of law directed judgment to be entered in favor of the respondent, the guardian of the minors, for $11 per week for a period of 300 weeks and $100 for burial expenses. The findings mentioned and the conclusion of law are properly challenged in this court by relators, the Hotel Radisson Company and its insurer.

The deceased was receiving at the time of her death a stipulated wage together with room and board in the hotel, amounting in all to $80 per month. She was the starter of the elevators and usually performed that part at the entrance of the first floor, but at times directed this work from the top floor. She was also superintending the elevators in an annex adjoining the hotel, and it was her duty to observe and arrange for the hours of service of the various operators, and to examine and note whether the elevators and doors worked and closed properly. This required her at times to ride a good deal on the elevators. The immediate circumstances surrounding the accident are these:

Mrs. Meakins had attended as a starter during the day and had worn her starter's uniform, and appears to have "punched out" on the time clock at 7:50 p. m. on November 3. A few minutes after 8 she, in street attire, entered one of the elevators and rode up and down for some 15 minutes with the operator, talking to her. What they were talking about is not disclosed. As they were thus occupied, a passenger got off at the tenth floor, Mrs. Meakins followed, the operator closed the door, and was just starting to move the elevator up, when Mrs. Meakins pushed open the doors and attempted to re-enter. She tripped, the elevator was moving, and she fell back into the pit to her death.

Relators make much of the fact that deceased had "punched out" on the time clock and that she was dressed for the street, hence, it is said, the finding is not sustained that she met death in the course of her employment from an accident arising out of it. This overlooks some per-

143—M. 10

suasive testimony given by the assistant manager of the employer, to the effect that deceased had no stated hours of work, but was practically on duty all the time, as he put it, "24 hours in the day;" that she used her own discretion as to the time within which she was to do that which was expected of her; that the wearing of a uniform was not obligatory for her, and that she was not required to punch the time clock, for her wages were not paid upon its record. The inference is near at hand that she was at the moment of the accident engaged in her work, endeavoring to ascertain whether the doors of the elevator she was riding on locked properly. It seems their defective condition in this respect was the direct cause of her death. We cannot say that the court's finding is not sustained under the rule announced in State ex rel. Niessen v. District Court, 142 Minn. 335, 172 N. W. 133.

The court held the children wholly dependent upon deceased. The fact was that the father of the children, the husband of the deceased, had deserted his family about three years before and had since contributed nothing to their support. The deceased and her children found a refuge with her father. She was ill for a time and unable to work. As soon as able she sought and obtained employment, the children in the meantime remaining with her father. She bought clothes for them and otherwise contributed to their support. At the time of the accident the children's father was in the army. Under the regulations of the military service, being married, he had been compelled to authorize the government to turn over a portion of his pay for the support of his family. No part thereof had been received up to the time of trial. We need not determine whether the evidence justifies a finding that the children were in fact wholly dependents, for G. S. 1913, § 8208, subd. 1, as amended by section 14, chapter 209, p. 290, Laws 1915, provides that minor children under the age of 16 years shall be conclusively presumed to be wholly dependent. The minor children thus referred to are the children of an employee accidentally killed in the course of the employment. The law does not in terms exclude the children of the female employee, and no good reason occurs to us why they should be excluded by construction. That dependents of female employees are intended to be protected by the act is clear, for a dependent husband is specifically provided for in subdivision 11 of said section 14.

The learned trial court evidently regarded the children as coming within subdivision 10 of the section just referred to which reads: "If the deceased employee leave a dependent orphan, there shall be paid forty per centum of the monthly wages of deceased, with ten per centum additional for each additional orphan with a maximum of sixty per centum of such wages." A woman may have obtained a divorce and have been awarded the care and custody of the children on the ground of the husband's misdeeds and his situation may be such that there is no hope of ever compelling him to contribute to the support of his children, or he may have deserted his family, as in this case. Is this statute to be so construed that, if the mother thus left, in an effort to earn a living for herself and children, is accidentally killed while working in an employ-ment where the Workmen's Compensation Act applies, the children should fare worse than would be the case had their father been killed un-der the same circumstances and the mother had previously voluntarily without cause deserted him and the children? In the latter case the widow could get no part, and there would be no difficulty at all in hold-ing that a fatherless child is an orphan, even though its mother is living.

An important case involving a large bequest under Girard's will is Soohan v. City of Philadelphia, 33 Pa. 9. The case limited the provision for "orphans" in the will to fatherless children. The opinion shows great research. Some stress is there laid upon Girard's French descent and the meaning of the word "orphan" in that language, also upon the construction the trustees of the institution, founded under this provision, had placed upon the meaning of the word and according to which the institution had been conducted for many years. In the course of the opinion it is stated that in a friendly controversy concerning the mean-ing of the word between John Quincy Adams and Judge Hopkinson in 1833, the former maintained that the word "orphan" includes those children who had lost both or either parent, while the latter held that the term was to be confined to those who had lost their father only. It is also stated that there was the same uncertainty of meaning in the then published dictionaries. "An orphan, in legal parlance, is a fatherless child." Posten v. Young, 7 Marsh (Ky.) 501. Stewart v. Morrison's Ex'r. 38 Miss. 419, places the same construction upon the word. How-ever, this was held too narrow in the subsequent case of Hall v. Wells,

54 Miss. 289. But there can be no doubt that a fatherless child may be classified properly as an orphan. May it also mean a motherless child?

In Friesner v. Symonds, 46 N. J. Eq. 527, 20 Atl. 259, it is said: "An orphan is a minor who has lost one or both of his parents. This is the definition by both Bouvier and Webster. But, according to the rule prevailing in this state, it would seem that a minor is not an orphan, unless his father is dead. The court in Heiss v. Murphy, 40 Wis. 276, on page 291 says: "The word orphan includes a minor who has lost both of his or her parents or one who has lost only one." Black defines an orphan as "Any person (but particularly a minor or infant) who has lost both (or one) of his or her parents." Bouvier: "A minor or infant who has lost both of his or her parents. Sometimes the term is applied to a person who has lost only one of his or her parents." Webster: "A child bereaved by death of both father and mother, or, less commonly, of either parent." The Century: "A child bereaved of one parent or of both parents, generally the latter."

The decisions as well as the dictionaries, recognizing that the term orphan may properly be applied to a motherless as well as to a fatherless child, we think it meets with no difficulty of construction to hold that the minors here in question are orphans within the meaning of subdivision 10 of section 14, chapter 209, p. 291, Laws 1915. They have been deserted by their father and bereft by death of their mother, the only parent who for the last three years made any attempt to support them. The original idea of designating fatherless children orphans the same as those who had lost both parents, seems to be that the father was the head of the household and responsible for the care and support of the minors therein. When the father has abdicated that place and deserted the family, the children become indeed orphans when also bereft of their mother. The purpose of the Workmen's Compensation Law is to provide for the dependents of the employee who accidentally meets with death in the employment. To accomplish the beneficent purpose intended the law should be given a broad rather than a narrow construction.

The judgment is affirmed.