FRANK SMITH

*vs.*

THE RELIEF ASSOCIATION OF PORTLAND FIRE DEPARTMENT.

Cumberland.          Opinion January 7, 1930.

418

*Hinckley, Hinckley & Shesong,* for plaintiff.
*Joseph E. F. Connolly,* for defendant.

SITTING: DUNN, STURGIS, BARNES, PATTANGALL, FARRINGTON, JJ.

BARNES, J. The defendant is a mutual benefit association incorporated in 1852, and existing at the present day, for the benefit of members of the Portland Fire Department, or their families in the event of their decease, when injury is received in the discharge of their duties as such members.

On December 17, 1926, the plaintiff was a substitute call-man working at a fire, and received grave physical injury. So far as affects his right to receive benefits from the defendant, it is admitted that he was a member of the Fire Department.

Under the constitution of the association, as last revised in 1908, its funds are held and disbursed by its trustees; a member, seeking relief after injury, gives notice to the relief committee, investigation is made and the trustees, upon finding of bodily injury or im-

pairment of health incurred in the performance of duties as a fireman, may award to the injured member "fifteen dollars per week for the first four weeks and at the rate of two dollars per day for the remainder of such sickness or disability."

Subsequent to the injury, notice was given and relief furnished, until September 7, 1927.

It is the contention of the plaintiff that incapacity to labor continued for 177 days after the last relief was furnished, and he has brought suit for $354.

By its brief statement, pleaded with the general issue, defendant claimed exemption from suit, and authority to dispense relief according to the regulations of its charter and constitution relating thereto, under the provisions of our statute regulating organization and conduct of charitable and benevolent corporations.

At the close of all the evidence, the defendant moved for a directed verdict upon the grounds set out in its plea. This motion was denied and exception to its denial taken.

In his instructions to the jury the Court eliminated all consideration of the question whether or not the defendant is a corporation whose members, under the law, can not sue it for benefits or relief, and charged that the plaintiff was entitled to recover if he had shown that he was entitled to the benefits which he claimed.

Exception was allowed to this portion of the charge.

Under the first exception defendant claims the judge erred in not declaring it a corporation protected from suit, upon the evidence, and under the second that he erred in his charge in declaring it not a corporation protected from suit.

The judge must deny a motion for a directed verdict when he feels there is evidence as to matters of fact upon which a verdict for the other party, found by a jury, would properly be sustained.

And if the existence of such evidence forces the refusal to direct a verdict, by the same token it requires submission of disputed questions of fact to the jury.

Whether the defendant corporation is an organization for charitable and benevolent purposes is a question of fact, and should have been submitted with proper instructions to the jury.

The plaintiff argues it is not exempt from suit by a member, because the rights of the member and the obligations of the associa-

tion are not of charity and benevolence, but those of a mutual insurance company, and for the reason that under defendant's constitution it may levy assessments upon its members, and the further reason, as plaintiff alleges that its revenues are chiefly derived from sale of tickets to its annual ball, and are not wholly donations of the charitable for public benevolence.

The list of cases decided by courts of last resort in this country is long, on what constitutes a charity, charitable use or charitable trust; when property is exempt from taxation because devoted to purposes of charity and benevolence, and that mutual insurance companies are not charitable and benevolent organizations.

In our state the first enactment of a general statute authorizing the organization and continuance of corporations to hold and dispense funds for charitable and benevolent purposes was passed by the legislature of 1847, and specifies certain powers and limitations.

The enabling act contains this limitation, "Sec. 7. No power granted by this act shall confer the right, upon any society, to sue any of its members for dues or contributions of any kind, nor shall it authorize any member to sue the society for any benefit or charity; but all such rights and liabilities, dues and benefits, shall remain as they now are or may hereafter be provided for, in the by-laws, rules and regulations of said societies."

By the revision of 1857, this limitation became Sec. 5 of Chap. 55, R. S., as follows:

"No corporation, organized for charitable or benevolent purposes, shall sue any of its members for dues or contributions of any kind, or be sued by any member for any benefit or sum due him, but all such rights and benefits, dues and liabilities, shall be regulated and enforced only in accordance with its by-laws." And the law has been so phrased and promulgated throughout all the general revisions of statutes to this day, and so reads in Sec. 6, Chap. 62, R. S.

It is probably not possible to pronounce a definition of a public charity, or society for charitable and benevolent purposes, in the legal sense, that must include all bodies entitled to that classification; but a definition quoted with approval by many text writers, and very widely adopted by courts, is contained in *Jackson* v. *Phillips*, 14 Allen, 556.

"A charity, in legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government."

"The true test of a public charity is the object sought to be attained; the purpose to which the money is to be applied; not the motive of the donor." *Fire Insurance Patrol* v. *Boyd*, a Pa. case, 15 Atl., 553-556.

Nor is it essential to a public charity that its beneficence is not available to any resident, but restricted to certain specified recipients.

"Distribution of benefits to a class may be for charitable or benevolent purposes." *Coe* v. *Washington Mills*, 149 Mass., 543; *Dascomb* v. *Martin*, 80 Me., 223; *Webber Hospital Ass'n* v. *Mc-Kensie*, 104 Me., 320.

The class must be of those who have a natural right to share benevolence from charity, a non-artificial classification, a class to whom the public is under obligation. *Philadelphia* v. *Masonic Home*, 160 Pa., 572, 23 L. R. A., 545.

"Public, or as they are frequently termed, charitable trusts, are those created for the benefit of an unascertained, uncertain and sometimes fluctuating body of individuals in which the *cestuis que trustent* may be a portion or class of a public community." *Webber Hospital Ass'n* v. *McKensie*, supra; *Minns* v. *Billings*, 183 Mass., 126; 5 L. R. A. (N. S.), 686.

By its constitution defendant provides that a special assessment may be laid upon the members of the association; and we are urged, because the association has the power to lay assessments, to rule that it, therefore, is not a public charity. In the enabling statute the use of the words, "dues or contributions of any kind," may well be stressed in support of the argument that the legislative intent was that power to exact dues or to lay assessments would not render a charitable organization a private charity. It is true that in the record there is no evidence of an assessment having been laid; and the testimony of two members, one of thirty-two and the

other of thirty-nine years' standing, was that no assessments had been laid since their membership began.

But we note that the power to lay assessments does not place defendant outside the statute.

"The fact that its (a public charitable institution's) funds are supplemented by such amounts as it may receive from those who are able to pay for the accommodation they receive does not render it the less a public charity. All sums thus obtained are held upon the same trust as those which are the gifts of pure benevolence." *McDonald* v. *Mass. Gen. Hospital*, 120 Mass., 432.

"Contribution of money by inmates to pay a portion of the expense of their maintainance does not render a public charity private." *Philadelphia* v. *Women's Christian Ass'n*, 125 Pa., 572; 17 Atl., 475; *Ingleside Ass'n* v. *Nason*, 109 Pac. (Kan.), 984; 29 L. R. A. (N. S.), 190, and L. R. A., 1917, B. 782.

Gifts to colleges and schools where tuition fees are charged are invariably upheld as gifts to charity.

"Likewise, a trust for the erection of convenient and healthful tenements for the laboring classes, and their maintainance in proper repair in a clean and tidy condition, creates a good charity, although they are to be let to laborers for rent, and not to be gratuitously furnished to them." *Webster* v. *Wiggin*, 19 R. I., 73; 31 Atl., 824; 28 L. R. A., 510.

A large portion of defendant's funds was admittedly amassed from donations of property owners in Portland.

Again in the preamble to its constitution we are reminded that the casualties to which defendant's members are exposed, in the line of duty to the public, are frequently very injurious, and sometimes ruinous to the health, comfort and pecuniary circumstances of those on whom they fall.

Reparation for such loss is now universally recognized as a proper burden on the public served; hence charity dispensed under existing laws to aid the public in bearing this burden is in the legal sense a public charity.

"Whatever is gratuitously done or given in relief of public burdens, or for the advancement of the public good, is a public charity." *Episcopal Association* v. *Philadelphia*, 150 Pa., 572; 29 L. R. A., 603.

Again, plaintiff contends that an annual increment to the funds of defendant, approximating $2,000.00, is realized from sale of tickets to the firemen's ball, at two dollars per ticket. All firemen are supposed to purchase tickets, but none will deny that the main body of such tickets is sold to the general public, and our conclusion is inescapable that the average citizen pays for the ticket which he buys as a contribution to this worthy charity. The many cases cited by plaintiff lack the essential element of indefiniteness in the immediate objects, or that of gratuity in the contribution, or are in regulation of mutual benefit associations deriving their funds wholly from fees and assessments.

Defendant is a corporation without capital stock and is not dividend paying; its benefits are by authority of the statute to be distributed as provided by its by-laws; if it arrives at dissolution, according to the only section of its constitution which is "unalterable," its funds are still to be applied to carry out the designs and intentions of the association.

We have seen that its income is derived mainly from charity; that claims for its bounty are not founded upon contract; that its distribution is general and to recipients, though of a class, still, as individuals, indefinite, fluctuating and unascertained; that its purpose meets a public need and lessens the public burden.

Hence we conclude that defendant is within the protection of the statute, and at most, if the learned judge was uncertain as to his duty to direct a verdict, the instruction to the jury that the determination whether this defendant was within the exemption of the statute was not for them, was error.

*Exceptions sustained.*
*New trial granted.*