LIVIA STEVENS ET AL

*vs.*

REUEL W. SMITH, EX'R,

ESTATE OF JENNIE E. HAYFORD ET AL.

Androscoggin.    Opinion, February 13, 1936.

*Seth May*, for plaintiffs.
*George C. Wing*, for Auburn Home for Aged Women.
*Reuel W. Smith*, pro se.
*Frank T. Powers*, for heirs of Jennis R. Hayford.
*Carl Getchell*, for Young Women's Christian Association.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, JJ.

BARNES, J.    Appeal from decree in equity to authorize disposition of trust funds, the residue under a will.

The will contains the following provisions: (1) "I give and devise my dwelling-house and land appurtenant thereto, situated on Pleasant Street, in said Auburn, together with the furniture and household goods of all kinds therein, to my sister ————, of South Boston, in the Commonwealth of Massachusetts, to use and enjoy during her lifetime, and from and after her decease to the Auburn Branch of the Woman's Christian Temperance Union, to be used by said Union as a home for girls and women. Authority is hereby expressly given to said Union to sell any or all of said property, and to invest the proceeds thereof in other property, real or personal, to be used for the same purpose and no other.

"Whatever other property I may die possessed of, I direct my Executor to pay the income thereof to my said sister, ———— as long as she may live, and upon her death, to turn the residue of my estate over to said Auburn Branch of the Woman's Christian Temperance Union, to be used by said Union in maintaining said home."

The questions at issue are whether a valid charitable trust was created under the terms of the will; whether under its terms the devisee named is the Auburn Woman's Christian Temperance Union; whether the said Union is such a charitable organization as may accept under the the terms of the will; whether the Auburn Home for Aged Women and the Lewiston-Auburn Young Women's Christian Association, Inc., may be substituted for the Auburn Women's Christian Temperance Union; for allowance of costs and for necessary instruction under the disposition authorized herein.

From the terms of the will it seems that the testatrix assumed her executor would find the homestead of his testatrix with furniture and household goods to become the property of the devisee named, and a residue of property, the income of which was to be used in maintaining the home of the testatrix when it should come into the possession of the trustee.

At the probate of the will it was evident that the funds of the testatrix had been so depleted that her personal estate was approximately $75.00, and that there were debts and expenses of about $1450.00, rendering it necessary for the executor to obtain license to sell, and to sell the real estate for the payment of debts. It ap-

pears that this was done, and the residue amounted to $2261.07.

The life tenant named in the will outlived her sister, and the executor of the will was appointed trustee for the life tenant. Payment of income was made to the life tenant until her death in 1920, when the trustee was directed to pay the principal sum aforesaid to the Auburn Branch of the Woman's Christian Temperance Union, this payment being made August 12, 1920, since which date the income has been added to the principal fund, the sum amounting to $4138.90 as of January, 1935.

The record shows that for more than forty years testatrix had been an active member of the Auburn W. C. T. U. and that she was interested in the welfare of girls and women and active in providing sufficient housing at reasonable expense for those needing assistance.

It seems not in contention that the Auburn W. C. T. U. was the intended trustee, and that an unincorporated association may receive and administer a charitable trust.

Counsel for the defendant heirs of the testatrix only "claim that the provisions of the Hayford will do not disclose a general charitable trust justifying the application of the *cy pres* doctrine."

That the trust set up in the will is a valid charitable trust is settled law in this state. *Drew* v. *Wakefield*, 54 Me., 291-298 ; *Smith* v. *Relief Association*, 128 Me., 417, 149 A., 23.

Finally, can this Court declare that the fund now held in trust by the Auburn W. C. T. U. be divided into equal shares, the one to be paid to the Auburn Home for Aged Women, the other to the Lewiston-Auburn Young Women's Christian Association, Inc., and so the fund be administered in the manner and for the purposes prescribed by the donor of the trust.

It is in evidence that the Auburn W. C. T. U. is not in condition to own or rent and operate a home for girls and women, but among the departments of work operated by them are what they term Child Welfare, and Aid to Mothers.

It is not questioned that the Auburn Home for Aged Women has and operates a Home, and that the Young Women's Christian Association, Inc., does likewise. Both these, proposed recipients, apparently do now conduct these wholly admirable undertakings.

That one is located in Auburn and the other in Lewiston, one

community, though separated by a river for political purposes, is not urged in defense.

When, to carry out the clearly expressed intention of a testator, it is found that the organization named to administer a general charitable trust can not accept the gift and execute the trust, it does not fail.

The trustee is not the beneficiary.

Under the will before us girls and women in need of homes are the beneficiaries, and a court of equity has power to name a trustee to carry out the intent of the testatrix, to provide the means to effectuate the desired end.

"It is a natural and necessary branch of the jurisdiction over charitable trusts that the means or details prescribed for the administration of such a trust should be subject to be molded so as to meet any exigency which may be disclosed by a change of circumstances, and to relieve the trust from a condition which imperils or endangers the charity itself, or the funds provided for its endowment and maintenance." *Lackland* v. *Walker*, 151 Mo., 210, 52 S. W., 414-425.

This is the doctrine of *cy pres*, "a judicial rule of construction applied to a will by which, when the testator evinces a general charitable intention to be carried into effect in a particular mode which can not be followed, the words shall be so construed as to give effect to the general intention." *Lynch* v. *Congregational Parish*, 109 Me., 32-38, 82 A., 432, 435.

Its scope and limit, as a rule of judicial construction adopted and administered by this Court are exhaustively stated in *Doyle* v. *Whalen*, 87 Me., 414, 32 A., 1022; *Brooks* v. *Belfast*, 90 Me., 318, 38 A., 522; *Snow and Clifford* v. *Bowdoin College*, 133 Me., 195, 175 A., 268.

Cases cited in the brief for the heirs are not in point. In *Bancroft* v. *Maine State Sanatorium*, where a trust was created in favor of a particular tuberculosis sanatorium association, for a specific purpose, to be used "at Hebron in its present location," by a declaration of trust providing for a forfeiture of the trust under certain conditions, with remainder over in the event of forfeiture to specified persons, *cy pres* was held inapplicable upon the failure of the trust by reason of the association turning over the sana-

torium to the state, the gift being to a particular association, without evidencing a general charitable intent.

In *Allen* v. *Nasson Institute*, 107 Me., 120, 77 A., 638, no general charitable intent was manifest, and the specific purpose failed.

In *Dupont* v. *Pelletier*, 120 Me., 114, 113 A., 11, where the purpose of a gift in trust for the establishment of a carmelite monastery was to administer to the spiritual interests of the French population of a given city, it was held there was no occasion for the application of the doctrine of *cy pres* which is based upon the non existence of a precise beneficiary, and the consequent diversion of the fund to the same general charitable purpose for which the trust was created, even though the trustees renounced.

In *Doyle* v. *Whalen*, supra, the gift was to a class, to donors definitely ascertainable, which if properly applied would be exhausted, within a few years, and had no permanency.

In *Brooks* v. *Belfast*, 90 Me., 318, 331, 38 A., 222, 226, where the beneficiary was the Central School District, of Belfast, the taxpayers therein, the District was abolished before the trust vested and the Court say, "If now, any proper authority existed in the Court to substitute the City of Belfast for the Central District, as the object of the donor's bounty, no scheme could be devised whereby the taxpayers residing on the territory comprised within the limits of Central School District could enjoy the exclusive benefit of the gift. All other taxpayers in the city would necessarily receive their ratable share of the fund in common with those of Central District."

The decree appealed from is confirmed, but requires modification in one regard.

It made provision for certain payments out of the fund, before division.

To these directions for payments should be added amounts properly due each side for expenses and services of counsel in appeal, all to be deducted from the fund, after allowing proper credit to said fund for income from the date of the original decree.

*Appeal dismissed.*
*Decree in accordance with*
*this opinion.*