Robert J. McDowell, S.
This proceeding was instituted by the trustee, Manufacturers and Traders Trust Company, duly appointed by this court on March 10, 1941 to obtain a deter *233 mination as to the validity, construction or effect of the trust created in paragraph “ fifth ” of the will of the testator, which reads as follows: ‘ ‘ Upon the marriage or death of the aforesaid Bertha A. Betty, and or that of Minnie Betty, surviving her, the income of the perpetual fund, established from the residue of my estate as hereinbefore directed, shall be expended for the care, maintenance and education of orphan, white American boys, who shall be provided with homes in Protestant-Christian Private American families. The care, support and educational facilities for each orphan boy thus selected shall be provided until he shall have reached the age of twenty-one (21) years, or shall have become self-supporting prior to reaching majority, or otherwise have been provided for. Upon the completion of the care, maintenance and education of any orphan or orphans, as aforesaid, the income money derived from the perpetual fund, that will thus be made available, shall be applied for the care, maintenance and education of other male orphans, in like manner as directed aforesaid, so that the income from the Fund will be consecutively and continuously a constant source and means to provide for the welfare and upbuilding of Christian manhood. The administration of the expenditures, selection of the orphan boys and the homes to which assigned and supervision of the general welfare of the boys shall be conducted under the jurisdiction of the Methodist Home for Children of Williamsville, N. Y. (near Buffalo, N. Y.) Provided however, that the injunction is laid upon that Institution, that the homes selected for the boys maintained under this bequest shall be Private homes, as aforesaid, and not the cottages or homes included as a part or portion of said Institution and under its direct supervision, as this paragraph is not to be construed as a bequest to said Institution, it being intended only that the Methodist Home for Children shall administer or supervise the general welfare and interest of the orphan wards selected for benefits herein, in the private home to which assigned.”
The petition indicates that the two original benefactors, Bertha A. Betty and Minnie Betty, of the trust are deceased.
It appearing that no question has been raised as to the charitability or validity of the within trust — so the court does conclude the same to be legal and valid and a charitable trust.
In the brief as filed by the Methodist Home for Children it is stated that there are no “ Full Orphans ” residing in foster homes under the direct supervision and control of the Methodist Home for Children who would qualify as ‘ ‘ white American boys, who shall be provided with homes in Protestant-Christian *234 Private American Families ”, and it is impossible for the Methodist Home For Children to comply with the provisions of the trust, if the term “ orphan ” is defined as “ one who has lost both parents.” The home does have individuals residing in foster homes under their direct control and supervision that would qualify for the use of these funds if the term “ orphan ” were defined as ‘ ‘ one who has lost one or both parents. ’ ’
The business of the trust will not, cannot, wait until every word shall become mathematically precise.
The primary function of the court in a construction proceeding is to ascertain the intention of the testator (Matter of Allar, 36 Misc 2d 406; Matter of McKay, 6 Misc 2d 549; Matter of Buechner, 226 N. Y. 440 and Matter of Fabbri, 2 N Y 2d 236).
This intent must be ascertained not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were constructed (see Matter of Fabbri, supra).
The real question hinges on the definition of the word “ orphan ” and what denotes an orphan within the meaning and intention of the testator. The word “ orphan ” appears not to have received a judicial interpretation or definition in this State, and the court is indeed reluctant to make a fortress out of the dictionaries (Spencer v. Childs, 1 N Y 2d 103, 106, 107) and conclude the construction of the word orphan as it is literally defined in Black’s Law Dictionary “ any person (but particularly a minor or infant) who has lost both (or one) of his or her parents ” andBouvier’s Law Dictionary “ A minor or infant who has lost both of his or her parents. Sometimes the term is applied to a person who has lost only one of his parents. ’ ’
Therefore, the court must seek intention by exploring for the testator’s definition of an orphan, which must, if possible, be ascertained and/or derived from within the four corners of the will.
It is clear to the court that the primary intention of the testator was to care for, support and educate orphan white American boys, who shall be provided with homes in Protestant-Christian private American families,— this, no matter how the determination is made regarding the boys’ status as orphans — the care, support, and education to be provided until the boys shall have reached the age of 21 years, or shall become self-supporting prior to reaching majority, or be otherwise provided for.
It is equally not clear to this court as to the testator’s determination of an orphan. The court has made diligent search for case law in this State and was unable to discover cases which *235 in any wise directly define or construe the word “orphan”, therefore, the court has of necessity gone beyond the borders of this State in search for case law bearing on this matter.
This court is of the opinion that the word “ orphan ” does mean a child under the age of 21 years and is a child who has lost its father or mother or both.
In reading the will of the decedent, the court is unable to discover therein a positive or direct definition as to testator’s definition or intent in respect to the term 1 ‘ orphan ’ ’ nor does the will contain any exclusion or definition as to who is not an orphan, therefore, the court must look beyond the will itself in order,'if possible, to discover the definition of “ orphan” and the court reasons that in earlier times the orphan was designated as fatherless and it being primarily founded on the fact that the father was the head of the house and responsible for the care of the household and for the care and support of the minors therein and at such time when the father abdicated that place through death the children became orphans. Modern times have changed this concept considerably in that many of the present day married women are considered breadwinners and do labor and earn incomes to assist their spouse in the support of the family.
Section 414 of the Family Court Act of this State directs when a woman shall be liable for the support of her children and reads as follows: “If the father of a minor child is dead * * * the mother of such child is chargeable with its support and, if possessed of sufficient means or able to earn such means, may be required to pay for its support a fair and reasonable sum according to her means as the court may determine. ’ ’
New York courts have held “the parents * * * have a legal and moral obligation to support him, the duty resting primarily on the father and secondarily on the mother ” (Siegel v. Hodges, 15 A D 2d 571; Matter of Garcy, 19 A D 2d 811).
The court held in McCoy v. Cline (213 Ala. 599, 601) ‘ ‘ Orphan ’ is primarily defined as a fatherless child * * * However, the word is now used, as the context may imply, to include a child who has lost the mother, and, of course, one who has lost both parents.” (Also, see, State ex rel. Radisson Hotel v. District Ct. of Hennepin County, 143 Minn. 144; Heiss v. Murphey, 40 Wis. 276, 291; Beardsley v. Selectmen of Bridgeport, 53 Conn. 489; Johnson v. Munsingwear, Inc., 224 Minn. 551.)
The cases cited immediately above do not differentiate between fatherless or motherless minors and it must be considered that these courts in such cases held that a child may be an orphan if either or both parents should be deceased.
*236 This court is of the opinion that the doctrine of cy pres should be invoked and applied in this matter for if it should be determined that an orphan would be one who has lost both parents, the Methodist Home for Children would be unable to place and care for, support and educate any so-called full orphans as set forth in its brief, according to the directions in the will in that there are no such full orphans residing in foster homes under the direct supervision and control of the Methodist Home for Children who would qualify and it would be equally true that the trustee would be restricted and unable to expend the moneys •provided in the trust for the care, support and education of the orphans mentioned therein; therefore, this court does conclude that such doctrine does allow an equitable construction of the trust to give effect to the creator’s general intention rather than to permit a charitable purpose to fail. (Camp v. Presbyterian Soc. of Sackets Harbor, 105 Misc. 139; Stevens v. Smith, 134 Me. 175; Thatcher v. Lewis, 335 Mo. 1130; Matter of Milne, 230 La. 729.) In Lutheran Hosp. of Manhattan v. Goldstein (182 Misc. 913, 917) the court said: “ It is well-established law that cy pres is a doctrine of approximation; that it is basically a rule of judicial construction; that its design and purpose are to aid the court to ascertain and carry out, as nearly as may be, the intention of the donor.”
This court does, therefore, find, determine and conclude that the'word “ orphans ” as used by the decedent in the “ fifth ” clause of his said will means minor children who are fatherless or motherless or both fatherless and motherless.